**UNITED STATES of America ex rel. Herbert TAYLOR**

v.

**Alfred T. RUNDLE, Superintendent.**

**Misc. No. 3770.**

United States District Court
E. D. Pennsylvania.

Nov. 3, 1969.

John Rogers Carroll, Philadelphia, Pa., for petitioner.

Henry Proctor, Asst. Dist. Atty., Montgomery County, Norristown, Pa., for respondent.

## OPINION

MASTERSON, District Judge.

Relator, Herbert Taylor, is presently incarcerated at the State Correctional Institution at Graterford, Pennsylvania. He seeks release from custody by this habeas corpus petition on the grounds that:

(1) His counsel represented conflicting interests at a hearing where defendant pled guilty and was sentenced;

(2) His guilty plea was not intelligently and voluntarily made;

(3) His counsel was ineffective;

(4) His guilty plea was induced by constitutionally infirm evidence.

Since we find that relator's first contention is meritorious, we find it unnecessary to discuss his other contentions.

## I. HISTORY OF THE CASE

Relator pled guilty to burglary and larceny on December 15, 1964, in the Court of Quarter Sessions, Montgomery County, before the Honorable David Groshens and received a sentence of 5–10 years. No inquiry was made at that time as to whether defendant's plea was voluntarily and understandingly made. Subsequently, Taylor filed in the same court a Post Conviction Hearing Act petition raising in substance the same claims that are before us. This petition was dismissed on May 12, 1966. On appeal to the Superior Court of Pennsylvania, this dismissal was affirmed per curiam on October 19, 1966. Relator's appeal to the Supreme Court of Pennsylvania was denied per curiam on December 29, 1966. Thereafter, petitioner filed with this Court his petition for a writ of habeas corpus and an evidentiary hearing was later held. It was conceded by the District Attorney at the hearing that state remedies have been exhausted and we agree.

## II. FACTS

Petitioner Taylor is a 28 year old male Negro with an 11th grade education. His past record includes several narcotics charges which were discharged and several convictions of both narcotics and burglary charges. Petitioner pled guilty to at least one of these previous charges.

Taylor and his co-defendant, David Ingram, were stopped by Officer Charles Schmidt on Sunday morning, May 24, 1964, at 2:30 A.M. while driving toward Philadelphia on Montgomery Avenue in Lower Merion Township, Pennsylvania, in a 1954 Buick Station Wagon with a missing right front fender and headlight. Ingram was the driver and Taylor his passenger. Schmidt testified at the state sentencing hearing that he stopped Taylor and Ingram to investigate the possibility that the station wagon was involved in an accident. At our evidentiary hearing and in his arrest report, however, he stated that he stopped the defendants because they appeared lost. (Taylor and Ingram were stopped about

an hour earlier in the same township for the same defective headlight and fender and were released). The officer also testified at our hearing that the defendants appeared "glassy-eyed" as if they had been drinking. However, neither in his arrest report nor in his testimony at the state sentencing hearing is such a description of the defendants given.

After Schmidt stopped the car, Ingram went to meet him and, upon request, produced his owner's card and driver's license. This meeting took place a few feet from Ingram's car, while Taylor remained inside. After inspecting Ingram's owner's card and license, the officer apparently walked over to the station wagon, peered in with his flashlight and noticed several boxes in the rear portion which were marked as containing televisions and radios and were stenciled "Ardmore". The boxes were partially covered with an old rug. When Schmidt questioned Ingram about the cartons he was told that he was delivering these items for his boss in Germantown but did not know the address and was taking them home for the night. At our evidentiary hearing, the officer testified that he also questioned Taylor and that Taylor gave him a story contradicting Ingram's. The officer's arrest report, however, indicates that he only questioned Ingram and his testimony at the state sentencing hearing does not refer to any contradictory stories. Schmidt then called for assistance and several officers later arrived. Taylor and Ingram were then taken to police headquarters and placed in a cell. A call was put out on the police radio to check whether any appliance stores in the area had been burglarized. It was not until 3:42 A. M., according to Schmidt's report, that the police learned that the Singer Sewing Machine Company in Ardmore, Pennsylvania, had been burglarized and that the items in the rear of the station wagon were stolen. The defendants were confronted with this finding and some 30 hours later, on Monday morning, May 25, 1964, confessed. No lawyer was present at the time they made their statement.

Some time after their arrest, Taylor and Ingram related the facts of their case to their privately retained counsel. Ingram originally hired the attorney and Taylor some time thereafter "went along" with Ingram's choice. Counsel held two or three conferences with his clients and testified at our hearing that he did not at any time discuss with the defendants the possibility of challenging their arrest as not based on probable cause and the statement they gave while under arrest. The notes counsel took at these conferences contain no references to the circumstances of the arrest. Moreover, counsel testified that he never saw the confession made by the defendants nor the arrest report of Officer Schmidt. He was apparently under the mistaken impression that the defendants confessed on the street prior to being jailed. The attorney also testified that he saw no illegality in the arrest on the basis of what the defendants told him and his sole investigation of the facts consisted of a discussion with an attorney who referred the case to him and with arresting Officer Schmidt. At our hearing, counsel professed a familiarity with the law of search, seizure and arrest in 1964, though he said he did not think that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) had been decided at that time. Pursuant to their attorney's advice, defendants pled guilty and were represented by him at their sentencing hearing.

At the hearing on December 15, 1964, counsel first entered a plea of guilty on the court established for the first time behalf of both defendants. Officer Schmidt was then called to the stand by the District Attorney. Schmidt's testimony summarized the circumstances of defendants' arrest and offense. Then the criminal records of Taylor and Ingram were read into the record. Ingram's record was longer than Taylor's and two of Taylor's offenses were summary matters. Counsel for defendants did not cross-examine or comment on the recital of petitioner's record. Taylor was then called to the stand by his counsel and

petitioner testified that he used narcotics and that the offense was generated by his drug habit. Taylor requested that the judge sentence him to a hospital for the purpose of overcoming his drug habit or, if he was to be sent to prison, that he be sent to a State Correctional Institution because the facilities are better than in the county prisons. There was a short cross-examination by the District Attorney which adduced that Taylor broke into the store and handed the fruits of the crime out to Ingram. Taylor was then excused from the stand and Ingram was called. However, before Ingram began to testify, Taylor was recalled to the stand by his own counsel and the following colloquy took place:

"Q. As between you and Mr.—Mr. Ingram is your brother-in-law, is he not?

A. That's right.

Q. Who is the more culpable in causing this incident?

A. I think I was."

(Trial Transcript, pp. 17–18). Taylor's counsel then commented "O.K." and Taylor was excused.

When counsel examined Ingram it was brought out that Ingram was employed by a Judge in Philadelphia. Moreover, counsel asked Ingram whether he knew it was wrong to "help" someone steal and whether he realized that the "assistance" rendered his brother-in-law made him equally guilty of the offense.

After all the testimony was taken, counsel for defendants requested that the court postpone sentencing so that counsel could verify Ingram's employment with the Philadelphia judge. When the court inquired "How about Mr. Taylor?", counsel responded "Well, if you want to dispose of Mr. Taylor now, that would be satisfactory". (Trial Transcript p. 26).

The court sentenced relator to 5–10 years. At a later hearing, on January 8, 1965, Ingram was committed to Norristown State Hospital for 90 days observation and recommendation to the

court. Ingram was later placed on probation for a period of 3 years.

## III. DISCUSSION

Petitioner contends that his plea and sentence are void because at his hearing his counsel sacrificed petitioner's interests in favor of his co-defendant in violation of the Sixth and Fourteenth Amendments.

■ Since Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it has been clear that a conflict of interest in the representation of two or more defendants is a denial of effective assistance of counsel. The mere fact that a single attorney represents co-defendants is not, of itself, sufficient to show a conflict of interest (See United States v. Berriel, 371 F.2d 587 (6th Cir. 1967), but where it is shown on the record that counsel devoted his efforts wholly to one defendant, sacrificing the interests of the other, such conduct results in an effective denial of representation. (See United States ex rel. Thompson v. Rundle, 294 F.Supp. 933 (E.D.Pa.1965).

■ The basis of petitioner's contention is the above-mentioned colloquy which took place when petitioner was specially recalled to the stand by his own counsel. In addition, the record reveals that little was said by counsel on behalf of his client other than that petitioner's problem was his drug addiction and that the judge should by his sentence attempt to help him overcome his addiction. Moreover, counsel kept referring, directly or indirectly, to the fact that petitioner was the motivating force behind the offense and that his co-defendant Ingram was a mere follower. For example, petitioner was asked by his own counsel.

"Q. Whose idea was it to go out to Lower Merion? (Trial transcript, p. 10).

\* \* \* \* \* \*

Q. Well, how did you get Mr Ingram involved in this on this morning? (p. 12).

\* \* \* \* \* \*

Q. Did he know what you were going to do when you left your home or his home?" (p. 12).

Additionally, Ingram was asked by defense counsel:

"Q. And if you know its wrong to steal that which belongs to another you know that its wrong to *help* someone steal, do you not? (p. 23) (emphasis added).

\* \* \* \* \* \*

Q. Do you realize that the *assistance* which you rendered your brother-in-law makes you equally guilty along with him of burglary? (p. 24) (emphasis added).

As Judge Troutman stated in a similar case, "everything that was said by defense counsel was presented in such a way as to mitigate the severity of the sentence meted out to one of the co-defendants by playing him against relator or contrasting him with relator". United States of America ex rel. Thompson v. Rundle, 294 F.Supp. 933, 935 (E.D.Pa. 1968).

The District Attorney argues that defendant was not prejudiced by the foregoing facts because petitioner himself testified, in substance, that he was the motivating force behind the offense when questioned by the District Attorney. This argument overlooks, however, the fact that petitioner's own counsel not only did not attempt to offset this circumstance but also emphasized it and played upon it in an attempt to mitigate co-defendant's sentence. Upon the foregoing facts, we cannot say that petitioner was not substantially prejudiced by his attorney's conduct at the hearing.

■ Such conflicting interest is, in our opinion, sufficient to vitiate both defendant's sentence and plea of guilty. It is apparent that the attorney's plan in this case was to place the onus of the offense on the relator, thereby obtaining a lighter sentence for his co-defendant who was his original client. In order to carry out his plan, the attorney had both defendants plead guilty at the proceeding in

question.[1] Hence, petitioner's plea was substantially affected by the attorney's conflict of interest and the conflict is sufficient to vitiate the entire proceeding on December 15, 1964, including the entering of a plea of guilty by petitioner at that time. A defendant, in deciding whether to plead guilty, is entitled to the advice of an attorney untrammeled by conflicting interests.

## ORDER

And now, this 3rd day of November, 1969, it is ordered that relator's petition for a writ of habeas corpus is granted; issuance of the writ will be stayed for a period of sixty (60) days, within which time the Commonwealth of Pennsylvania may either appeal this decision or retry relator.

---

1. At our hearing, the attorney testified that:

   "Assuming that they told me what happened to be correct, I told them that I would suggest—it would be to their best advantage to plead guilty." (N.T. p. 84).