Ralph Paul **BOEHMER**

v.

**UNITED STATES** of America.

Civ. A. No. 75–2912.

United States District Court,
E. D. Pennsylvania.

March 23, 1976.

Thomas Colas Carroll, Philadelphia, Pa., for petitioner.

William C. Fields, III, Asst. U. S. Atty., Robert E. J. Curran, U. S. Atty., E. D. Pa., Philadelphia, Pa., for the government.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court is petitioner Ralph Paul Boehmer's motion pursuant to Title 28 U.S.C. § 2255 to withdraw his plea of guilty to Counts I and II of Criminal Indictment No. 74–710 and vacate judgment and sentence. The petitioner and his wife, co-defendant Ann Marie Boehmer, were represented by the same attorney, Joseph P. Zawrotny, Esquire, from a time prior to the arraignment through the entry of the guilty plea. Petitioner alleges that he was prejudiced by a conflict of interest resulting from this joint representation, and was therefore denied his Sixth Amendment

right to the effective assistance of counsel.[1] A brief history of the proceedings to date is necessary to place this section 2255 motion in context.

## I. PROCEDURAL HISTORY

On December 3, 1974, Ralph Boehmer and his wife were indicted under Criminal Indictment Number 74–710, which superseded Criminal Indictment Number 74–497 returned on August 27, 1974. The superseding indictment averred that petitioner and his wife were involved in a scheme to possess and deal in counterfeit currency in violation of Title 18 U.S.C. §§ 472, 473. More specifically, petitioner was charged in four counts with distribution of seven thousand dollars ($7,000.00) in counterfeit twenty dollar Federal Reserve Notes, and Ann Marie Boehmer was charged in a single count as an aider and abettor of the distribution scheme in that she facilitated a sale between her husband and a recipient of the counterfeit bills.

On March 17, 1975, Ralph Boehmer entered a plea of guilty to Counts I and II of the four count indictment, and acknowledged that on March 27, 1974, he received six hundred dollars ($600.00) in genuine currency for passing two thousand dollars ($2,000.00) of counterfeit currency. This plea was entered in accordance with an agreement made by petitioner, acting through counsel, with the United States Government. Pursuant to this plea bargain, the Government agreed to dismiss the charges against Ralph Boehmer in Counts III and IV of the indictment, and agreed not to proceed against Ann Marie Boehmer under Count II.

The Court accepted the guilty plea and the terms of the plea arrangement, and on April 8, 1975, sentenced petitioner to six years incarceration under Count I, with a consecutive term of five years probation under Count II. Pursuant to Title 18 U.S.C. § 4208(a)(2), petitioner's eligibility for parole was placed within the discretion of the Parole Board. This sentence reflected the Court's consideration of several factors including the defendant's criminal record [2] and his favorable demonstration of contriteness and concern for his wife and family.[3]

Ralph Boehmer filed two post-sentencing motions for reduction of sentence, both of which were denied by the Court.[4] On October 14, 1974, he filed another collateral attack on his conviction, the instant section 2255 motion to set aside his guilty plea and subsequent sentence. As a corollary, he also sought enlargement upon his own recognizance pending disposition of the substantive motion; however, following a hearing, this motion for release was denied.

On February 10, 1976, after the Report and Recommendation of the United States Magistrate was received and adopted, a hearing was held on petitioner's section 2255 motion to determine "whether or not the joint representation by Mr. Zawrotny abridged the plaintiff's right to the effec-

---

1. In his motion, Ralph Paul Boehmer also alleges that he was denied his Fifth Amendment right to due process because of the dual representation. This claim was not pressed in either submitted memoranda or in oral argument, and the Court does not find it necessary to dwell on this claim except to the extent that it is collaterally dealt with in the following discussion.

2. Ralph Boehmer's prior adult criminal convictions are as follows: Larceny, 2/21/64; Burglary from automobile, 1/5/64; Larceny, 9/4/63; Larceny and conspiracy, 9/3/63; Burglary, 5/11/63. The offense at issue here of passing counterfeit currency was committed while petitioner was serving a term of probation under the supervision of the County of Philadelphia.

3. N.T. at 15, *United States v. Ralph Paul Boehmer, Ann Marie Boehmer,* Criminal No. 74–710 (Sentencing April 8, 1975).

4. The Court considered a letter from petitioner to the Court as a *pro se* motion for reduction of sentence. *United States v. Ralph Paul Boehmer,* Criminal No. 74–710 (Doc. 8 filed May 9, 1975) Printed in full, infra at 771–772. In support of his motions, petitioner stated his desire to cooperate fully with the Government (Doc. No. 7 filed May 7, 1975). However, the Government contended that he refused to cooperate. (Doc. No. 9 filed May 9, 1975).

tive assistance of counsel."[5] On the basis of facts disclosed at this hearing as well as other facts apparent from the record, the Court denies the motion for the reasons discussed below.

## II. PETITIONER WAIVED HIS RIGHT TO SEPARATE, INDEPENDENT COUNSEL

■ In *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the Supreme Court held that the Sixth Amendment right to the fair and effective assistance of counsel can be abridged when several defendants are represented by single counsel. This right to the unimpaired assistance of an attorney applies prior to trial when a defendant is considering how to plead, as well as during trial. *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Glasser v. United States.*

■ Although it is fundamental, this constitutional right can be knowingly and intelligently waived. *Glasser v. United States,* 315 U.S. at 70–71, 62 S.Ct. at 465; *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942); *Faretti v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In this regard, the Third Circuit does not require trial judges to ascertain from defendants whether their choice of joint counsel is an informed decision, but it does refuse to find a waiver of this constitutional right in the face of a silent record. *Government of Virgin Islands v. Hernandez,* 476 F.2d 791, 793–94 (3d Cir. 1973). This is consistent with the Supreme Court's admonition in *Glasser* that trial judges should indulge every reasonable presumption against waiver. 315 U.S. at 70, 62 S.Ct. at 465, *Government of the Virgin Islands v. John,* 447 F.2d 69, 74 (3d Cir. 1971).

The present action is not a silent record case; on the contrary, the facts demonstrate a waiver by petitioner of his right to separate counsel. On September 24, 1974, at arraignment, the United States Magistrate instructed petitioner as follows:

You are also entitled to have counsel and if you are unable to afford an attorney and are otherwise qualified, I will appoint a lawyer to represent you free of charge. I note, however, the appearance of Mr. Zawrotny, who represents both of you [Ralph Paul Boehmer and Ann Marie Boehmer]. I point out to both of you and to Mr. Zawrotny what I stated earlier in the other cases, that in the case of dual representation there is a possibility of a conflict of interest. If such a possibility exists, it behooves the parties to have separate counsel and for counsel to examine these facts very closely and make a determination as to what the proper representation should be.[6]

Thus, consistent with the position of the Third Circuit that such warnings should come at the earliest stage of the criminal justice process, petitioner was informed at arraignment of the potential dangers of joint representation and of his right to court appointed counsel if he qualified as an indigent.[7] *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 211 (3d Cir. 1973).

After the arraignment, petitioner's counsel, Joseph P. Zawrotny, Esquire, either acting on his own volition or reacting to the admonition of the United States Magistrate, impressed upon petitioner and his wife that there could be problems resulting from his joint representation, and informed them that they had a right to separate counsel.[8] The decision at that time was that Mr. Zawrotny would represent both.

This was not the only time that counsel conferred with petitioner about the subject

---

**5.** N.T. at 2, *Ralph Paul Boehmer v. United States,* Civil Action No. 75–2912. (Hearing February 10, 1976).

**6.** N.T. at 2–3, *United States v. Ralph Paul Boehmer and Ann Marie Boehmer,* Criminal No. 74–497 (Arraignment Sept. 24, 1974).

**7.** At the hearing on this matter, no evidence was presented that petitioner was in fact indigent at the time of the criminal proceeding and unable to afford separate counsel.

**8.** N.T. at 11, 12, *Ralph Paul Boehmer v. United States,* Civil Action No. 75–2912 (Hearing Feb. 10, 1976).

of the potential for conflict; rather, it was discussed again toward the end of 1974, shortly before the petitioner's entry of a plea of guilty.[9] Furthermore, it is Mr. Zawrotny's uncontested testimony, given under oath,[10] that he explained to Ralph Boehmer the problems of dual representation.[11]

It is evident that petitioner was aware of his right to separate counsel by the fact that he considered for a time hiring another attorney prior to his entry of the guilty plea. As stated earlier, shortly after the arraignment, Ralph Boehmer indicated that he wanted Mr. Zawrotny to represent both him and his wife. However, "at a point thereafter he indicated to me [Mr. Zawrotny] that he had communicated with another attorney and that I would be representing Mrs. Boehmer. Then, as we got closer to trial, he indicated to me that I would be representing both.[12] . . . There was conversation with Mr. Boehmer that there would be separate counsel if they [Ralph Boehmer and Ann Marie Boehmer] went to trial, and that at a later point there was conversation that I would be representing both at trial . . . ."[13]

The testimony of Joseph P. Zawrotny, Esquire, clearly distinguishes the present action from the silent record line of cases. Judge Rosenn described a silent record in *Government of Virgin Islands v. Hernandez,* 476 F.2d at 794 as follows:

Despite the prosecutor's expression of concern, the trial judge did not apprise appellants of the perils of joint representation. *Nor does the record indicate that defense counsel explained the dangers to the clients.*
[Emphasis added].

■ Here counsel's uncontradicted testimony is not only that he explained the dangers of joint representation to petitioner, but that there were ongoing discussions on the subject of conflict of interest, and that after communicating with and considering hiring separate counsel, petitioner ultimately decided to continue with joint representation. These facts, coupled with the warning of the United States Magistrate at arraignment, demonstrate that Ralph Paul Boehmer knowingly and intelligently waived his Sixth Amendment right to separate counsel.

## III. DUAL REPRESENTATION BY A SINGLE ATTORNEY OF BOTH PETITIONER AND HIS CO–DEFENDANT WIFE DID NOT RESULT IN A CONFLICT OF INTEREST

■ Besides the fact that there was an effective waiver by Ralph Boehmer of his right to independent counsel, petitioner has, in any event, failed to sustain his burden of establishing the existence of a conflict of interest. Representation of co-defendants by the same attorney is not tantamount to the denial of effective assistance of counsel. In *Walker v. United States,* 422 F.2d 374, 375, (3d Cir. 1970), cert. denied 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970), and in subsequent cases,[14] the Third Circuit has defined the movant's burden in this area as follows:

There must be some showing of a possible conflict of interest or prejudice, however remote, before a reviewing court will find the dual representation constitutionally defective.

■ Although this burden is properly a light one, a claim of conflict of interest must be based on some factual support. General legal conclusions not supported by factual allegations are insufficient to sup-

9. *Id.* at 23.

10. *Id.* at 7–8.

11. *Id.* at 17. At the hearing, petitioner neither took the stand himself nor presented any witnesses to contradict Mr. Zawrotny's testimony.

12. *Id.* at 18.

13. *Id.* at 20. See also pp. 26–27.

14. *United States ex rel. Horta v. DeYoung,* 523 F.2d 807 (3d Cir. filed Oct. 2, 1975); *United States ex rel. Hart v. Davenport,* 478 F.2d 203, 209–10 (3d Cir. 1973); *United States v. Rispo,* 460 F.2d 965, 970 (3d Cir. 1972); *United States ex rel. Small v. Rundle,* 442 F.2d 235, 237–38 (3d Cir. 1971).

port a section 2255 petition. *Walker*, 422 F.2d at 375.

At the hearing held on this matter, petitioner did not introduce any evidence to establish a possible conflict of interest in this case. Instead, he chose to rely on the uncontested fact that defense counsel negotiated a plea arrangement with the Government whereby if petitioner pled guilty to two of the four counts of the indictment, the single count against his wife would be dismissed.[15]

But this fact alone is insufficient to establish the existence of a potential conflict of interest. As Judge Gibbons stated in *United States ex rel. Hart v. Davenport*, 478 F.2d at 210:

> The *Walker* test of possible conflict of interest or prejudice, however remote, must be applied . . . in light of the normal competency standard for adequacy of representation by counsel in this circuit.

That standard is the exercise of the customary skill and knowledge which normally prevails at the time and place. *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970).

Counsel's representation of Ralph Boehmer was competent; the plea bargain made with the Government was consistent with the established standard of adequate representation. This was not a situation like that in *United States ex rel. Taylor v. Rundle*, 305 F.Supp. 1036 (E.D.Pa.1969), where defense counsel proceeded in court in a manner that mitigated the severity of the sentence meted out to one defendant by playing him against or contrasting him with a co-defendant. Rather, the plea agreement here benefited both defendants. Pursuant to the agreement, two of the four counts against Ralph Boehmer were dropped—an obvious benefit to petitioner—and the charges against his wife were also dismissed.

This latter aspect of the bargain not only benefited Ann Marie Boehmer, but was consistent with the desires of petitioner as well:

> Mr. Boehmer's primary concern—well, of course, his primary concern was with himself, but he was very upset about his wife going to jail . . . he had a little girl. He was very upset as to what is going to happen to the child if his wife goes to jail, and how serious is it, was the probability of his wife going to jail. As a matter of fact, most of the—his conversations with me was why—is about his wife going to jail. [sic].[16]

The petitioner's concern about his wife and family is amply demonstrated by his letter to the Court of May 4, 1975; considered by the Court as a *pro se* motion for reduction of sentence:

> Dear Judge Hannam: [sic]
>
> I am writing to you on a matter of the utmost gravity. Please forgive my temerity in appealing to the humanitarian instincts which you possess. Your Honor, I have been in prison one month and the impact of my having done wrong has been very forcefully brought to the forefront of my every thought. I have just been told by my wife some news which under any other circumstances would be occasion for rejicing [sic]. Your Honor, my wife is expecting our second child! We have a little girl who is 3½ years old. I am aware that this factor does not lessen the gravity of my crime but it certainly gives me an added motivation to become a more responsible and law abiding citizen. Your Honor, I have no prior felony record. I did not commit a crime of violence. I did not hurt or threaten another human being. My crime was stupidity and greed. I wanted to make a few extra dollars. I am truly penitent. Sir, I did not give the name of the person who sold me the counterfeit money to the authorities because the person threatened to harm my wife and child if I exposed him. My lack of cooperation was attributable to that factor. When I see the suffering and heartache that my being in

---

15. N.T., *supra*, note 5 at 3.

16. *Id.*, N.T. at 12.

prison has caused my family, I realize that decision was wrong.

Your Honor, I beg you to be lenient, if not for my sake, for the sake of my family, I ask you to consider a sentence reduction for me. I acknowledge that I deserve punishment but I can assure you Sir, that you will never regret any leniency you show me now. You [sic] Honor, I would accept any length of probation you designate if you would possibly reduce my actual jail term. My family needs me. You sir are undoubtedly a family man. You must realize that, as in all crimes, the family who is guiltless suffers much greater hardship than the lawbreaker. I implore you to believe me when I say that I have certainly learned that harsh lesson. Your Honor, I respectfully request that you consider a sentence reduction in my case for the noted reasons. I will be forever gratified to you, as will my family, if you can find it in your heart to be merciful. I thank you, in advance sir, for whatever time and effort you devote to consideration of my request, I thank your Honor, no matter what your ultimate decision may be.

Most sincerely,

Ralph Boehmer [17]

Because of petitioner's natural concern for the welfare of his wife and family, it was incumbent on counsel to inform petitioner of the Government's offer. In fact, Mr. Zawrotny would have been guilty of ineffective assistance of counsel if he had *not* advised petitioner about it.

For approximately three months, from the end of 1974 until the entry of his guilty plea on March 17, 1975, petitioner had the opportunity to consider the Government's offer.[18] His decision to enter into the plea agreement may have been influenced by his appraisal of the Government's case against him[19] and by the possibility of securing leniency should a guilty plea be offered and accepted.[20] Clearly the benefit of having the criminal charges against his wife dismissed played a role in his decision. Furthermore, Ralph Boehmer's decision to plead guilty in this instance was deliberate, informed, and intelligent.[21]

There is no evidence that Mr. Zawrotny improperly coerced petitioner into pleading guilty; rather, the uncontroverted testimony is that although counsel recommended that petitioner enter the plea,[22] he did not try to persuade him to accept the plea bargain.[23] Furthermore, Mr. Zawrotny testified that if he had been solely representing petitioner, and if the co-defendant in this case had not been petitioner's wife, he still would have recommended that Ralph Boehmer plead guilty.[24]

In this regard, the following statement in *United States v. Horne*, 423 F.2d 630, 631 (9th Cir. 1970) is pertinent:

trial courts "must be able, and be freely permitted, to rely upon counsel's representations that the possibility of such a conflict [resulting from joint representation] does or does not exist."

As stated earlier, there is no evidence to contradict Mr. Zawrotny's representations, nor any indication that he did not give petitioner's defense the attention it required. Petitioner has not sustained his burden pursuant to a section 2255 motion of

17. See note 4, *supra*.

18. N.T., *supra* note 5 at 28.

19. The Government alleged that it was prepared to produce for trial two witnesses who could positively identify petitioner as having sold them counterfeit bills.

20. The sentencing judge did take into consideration petitioner's contriteness and familial situation. See note 3, *supra,* and accompanying text.

21. *See* Notes of Testimony, *United States v. Ralph Paul Boehmer, Ann Marie Boehmer,*

Criminal No. 74–710 (Change of Plea Mar. 17, 1975) Petitioner's contention that the plea was entered into without the necessary appreciation of its nature and consequences is entirely conclusory and without factual support, and therefore insufficient to support a section 2255 petition. *Walker,* 422 F.2d at 375.

22. N.T., *supra* note 5, at 30.

23. *Id.* at 28.

24. *Id.* at 29.

demonstrating a possible conflict of interest resulting from the joint representation in this case. *Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Petitioner's motion is denied.