John H. MONE

v.

Carl ROBINSON, Warden, Connecticut Correctional Institution at Somers.

Civ. No. H–75–296.

United States District Court, D. Connecticut.

March 28, 1977.

See also D.C., 69 F.R.D. 299.

Stephen Wizner, Yale Legal Services Organization, New Haven, Conn., Ann F. Thomas, New York, N.Y. Michael J. DeGregorio, Pittsfield, Mass., for petitioner.

Richard F. Banbury, Chief Asst. State's Atty., Hartford, Conn., for respondent.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

Petitioner John H. Mone is currently incarcerated at the Connecticut Correctional Institution at Somers. He is serving a sentence of nine to twenty years as a result of his 1973 plea of guilty to the charge of conspiracy to commit kidnapping in the second degree. Following his conviction, petitioner applied for a writ of habeas corpus in the Superior Court for Middlesex County. This application was dismissed by Judge Naruk in an opinion filed April 15, 1975. *Mone v. Zeichner*, Docket No. 23692 (Superior Ct. Middlesex Cnty.). Judge Naruk also denied a Petition for Certification

for review to the Connecticut Supreme Court. Jurisdiction exists in this court pursuant to 28 U.S.C. § 2254.[1]

The principal question raised in this petition for habeas relief concerns Mone's claim that he was deprived of his sixth amendment right to the effective assistance of counsel because the same attorney represented both him and his wife Nanette at their plea and sentencing.[2] Petitioner and his wife were involved in a bizarre plan to kidnap a well-to-do Bloomfield man. They contacted members of a motorcycle gang to help them in their scheme. Through the motorcycle gang, the police became aware of the plot and prevented any harm coming to the family of the intended victim. Mone was arrested on April 3, 1973, for the crimes of conspiracy to commit kidnapping in the second degree, conspiracy to commit larceny by extortion, and accessory to attempted larceny by extortion. Mrs. Mone was arrested April 22, 1973, and charged with the same crimes.

With the aid of petitioner's parents, the two Mones retained Attorney James Egan as counsel.[3] Egan arranged a plea bargain for the two defendants whereby both would plead guilty and the state's attorney would recommend a suspended sentence for Mrs. Mone and a term of four to fifteen years for petitioner. On June 6, 1973, before Judge Dannehy in Hartford County Superior Court, Mone pled guilty to the charge of conspiracy to commit kidnapping in the second degree; his wife pled guilty to the crime of accessory to attempted larceny by extortion. The two were sentenced by Judge Dannehy on June 28, 1973, at which

time Attorney Egan portrayed Mrs. Mone as an individual "misled grievously by her husband."[4] Judge Dannehy accepted the state's recommendation of a suspended sentence for Mrs. Mone, but then sentenced petitioner to a term of nine to twenty years. There is .nothing in the record to demonstrate that either Attorney Egan or Judge Dannehy ever questioned petitioner about any possible conflict of interest arising out of the joint representation.

Petitioner argues that he was substantially prejudiced by the dual representation because Attorney Egan negotiated a "package deal" plea bargain for the defendants which secured significant advantages for the wife at Mone's expense and because Egan emphasized petitioner's culpability as a mitigating factor in Nanette Mone's defense. Judge Naruk rejected this claim and held that petitioner had failed to show by "clear and convincing evidence that some real conflict of interest" existed between the joint codefendants. *Mone v. Zeichner, supra* at 3.

### The Legal Standard

 The sixth amendment right to the effective assistance of counsel made applicable to the states in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), contemplates an attorney devoted solely to the interests of his client, whose advocacy and zeal is unimpaired by any conflict of loyalties. *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The right to such untrammeled and unimpaired assistance applies prior to trial in considering how to

---

1. Petitioner has not sought a new evidentiary hearing in federal court. Rather he prefers to rely on certain affidavits and the record made in the state system during his guilty plea, sentencing, and habeas corpus hearings.

2. Petitioner also contends that his guilty plea was involuntary because induced by misrepresentations from counsel. Since I grant relief on the basis of petitioner's first claim, I express no opinion on the merits of this second argument.

3. The financial aspects of the retention are unclear. Petitioner's mother testified at the state habeas hearing that Egan agreed to defend the couple for $1,000. Whether this retainer represented Egan's total fee should a trial have proved necessary is not apparent. Transcript at 71–73, *Mone v. Zeichner, supra.*

4. Transcript at 3, *State v. Nanette Mone,* Docket No. 36265 (Superior Ct. Hartford Cnty. June 28, 1973), Exhibit C to Petitioner's Memorandum of Law in Opposition to Respondent's Motion to Dismiss and in Support of Petitioner's Application for Writ of Habeas Corpus.

plead, *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), during trial, *Glasser v. United States, supra,* and at the time of sentencing, *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). *See also United States ex rel. Hart v. Davenport,* 478 F.2d 203, 209 (3d Cir. 1973). The rule in this Circuit has been repeatedly stated. The mere representation of two defendants by the same attorney does not automatically result in a deprivation of the right to counsel. *United States v. Mari,* 526 F.2d 117, 119 (2d Cir. 1975). *See also Dukes v. Warden,* 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). It is settled that "some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel." *United States v. Lovano,* 420 F.2d 769, 773 (2d Cir.), *cert. denied,* 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970). This rule had been followed consistently by the Court of Appeals in cases on direct appeal, *United States v. Carrigan,* 543 F.2d 1053 (2d Cir. 1976), on federal review by way of 28 U.S.C. § 2255, *Abraham v. United States,* 549 F.2d 236 (2d Cir. 1977), and on state habeas corpus proceedings. *United States ex rel. Ross v. LaVallee,* 448 F.2d 552, 555 n. 4 (2d Cir. 1971); *United States ex rel. Hussey v. LaVallee,* 428 F.2d 457, 458 (2d Cir. 1970), *cert. denied,* 400 U.S. 995, 91 S.Ct. 469, 27 L.Ed.2d 444 (1971). It is sufficient that petitioner demonstrate such prejudice by a preponderance of the evidence without mounting "clear and convincing" proof. *United States v. Foster,* 469 F.2d 1, 5 (1st Cir. 1972).

The state argues that Mone was not prejudiced by the dual representation because he supported counsel's strategy to shift the blame to him and exonerate his wife. The contention raises two questions: 1) whether Mone knowingly and intelligently waived any defect arising out of Egan's joint counsel, and 2) whether Mone was in fact prejudiced by the alleged conflict of interest.

*Waiver*

■ Waiver has traditionally been defined as the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). This court must indulge every reasonable presumption against the waiver of fundamental rights. *Glasser v. United States, supra,* 315 U.S. at 70, 62 S.Ct. 457. Judge Mulligan has recently outlined the procedure the trial court should follow when presented with codefendants represented by the same attorneys:

> "When a potential conflict of interest arises, either where a court has assigned the same counsel to represent several defendants or where the same counsel has been retained by co-defendants in a criminal case, the proper course of action for the trial judge is to conduct a hearing to determine whether a conflict exists to the degree that a defendant may be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the Sixth Amendment. The defendant should be fully advised by the trial court of the facts underlying the potential conflict and be given the opportunity to express his views."

*United States v. Carrigan, supra,* 543 F.2d at 1055. *See also United States v. DeBerry,* 487 F.2d 448, 453 (2d Cir. 1973); *United States v. Alberti,* 470 F.2d 878, 881 (2d Cir. 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973); *Morgan v. United States,* 396 F.2d 110, 114 (2d Cir. 1968). While the procedure set out in *Carrigan* may not in itself be constitutionally required, the court's concern demonstrates that before a waiver of the constitutional right to the effective assistance of counsel may be found, there must be some personal inquiry of the defendant directed specially at the alleged conflict of interest.

■ In this case, the trial judge did question Mone as to whether he was in general satisfied with Mr. Egan's counsel.[5] These

---

5. The court's questioning of petitioner at the time of his plea concerning his satisfaction

with Mr. Egan's representation is set out below:

inquiries did not, however, touch on any possible conflict of interest or prejudice to the petitioner resulting from Egan's dual representation. Rather, the court emphasized the fact that the state had agreed to drop two lesser counts against Mone in exchange for the plea of guilty on the conspiracy to kidnap charge and that Egan had arranged for a psychiatric test to determine petitioner's competency to stand trial. The record is barren of any evidence showing that Mone was aware of a potential conflict involving his attorney's representation of the couple. On this silent record, devoid of the particular inquiry waiver of the right to the undivided loyalty of counsel demands, I cannot find that petitioner knowingly and intelligently relinquished his sixth amendment right to the effective assistance of counsel.[6]

### Prejudice[7]

Petitioner argues that he was prejudiced in fact from the joint representation, particularly at the time of sentencing. Mone and his wife appeared before Superior Court Judge Joseph F. Dannehy for sentencing. At the sentencing hearing Attorney Egan described Mrs. Mone as "misled grievously by her husband." He called her a "young lady" who was the "victim of circumstances to a degree."[8] The court

"THE COURT: Now, have you discussed fully with Mr. Egan the offense of conspiracy to commit kidnapping in the second degree charged against you in this information?

"THE DEFENDANT: Yes, I have.

"THE COURT: Did you discuss the plea of guilty that you made to the charge?

"THE DEFENDANT: Yes, sir.

"THE COURT: Are you satisfied with the advice and with the assistance that Mr. Egan has given you?

"THE DEFENDANT: Yes, sir, I am satisfied with his advice.

"THE COURT: Was there anything that you asked Mr. Egan to do for you that he didn't do?

"THE DEFENDANT: No, sir.

"THE COURT: Can you think of anything that he should have done for you that he didn't do?

"THE DEFENDANT: No, sir.

"THE COURT: You were originally charged in the information filed against you by the State's Attorney with two other offenses. Apparently, the State will not proceed against you on those first two counts. Is the fact that Mr. Egan was able to gain these concessions for you part of the reason for your satisfaction?

(The Defendant conferred with Mr. Egan.)

"THE DEFENDANT: Yes, sir.

"THE COURT: Was Mr. Egan's concern that you would fully understand the nature of this proceeding a concern that manifested itself in his arranging for the various tests which you undertook before this plea? Is that part of the reason for your satisfaction?

(The Defendant conferred with Mr. Egan.)

"THE DEFENDANT: Yes, sir.

"THE COURT: Is that so?

"THE DEFENDANT: Yes, sir.

"THE COURT: So that in every way Mr. Egan represented you competently and adequately?

"THE DEFENDANT: Yes, sir.

"THE COURT: He did everything that you wanted him to do? You can think of nothing else that he should have done?

(The Defendant conferred with Mr. Egan.)

"THE DEFENDANT: No, sir."

Transcript at 3–5, State v. Mone, Docket No. 36246 (Superior Ct. Hartford Cnty. June 6, 1973), Exhibit A to Petitioner's Memorandum of Law in Opposition to Respondent's Motion to Dismiss and in Support of Petitioner's Application for Writ of Habeas Corpus.

6. A guilty plea acts as a waiver of all independent constitutional deprivations that occurred prior to the entry of the plea so long as the "advice [of counsel] was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). See also Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), United States v. Mari, supra, 526 F.2d at 119 n. 1. As note 14 in McMann makes clear, counsel rendered ineffective because of a dual representation is not within the required range of competence. McMann v. Richardson, supra, 397 U.S. at 771 n. 14, 90 S.Ct. 1441.

7. In United States v. DeBerry, supra, 487 F.2d at 453, 54 n. 6, the Court of Appeals held that where there has been no satisfactory judicial inquiry concerning the joint representation, the burden shifts to the government on the question of prejudice. See United States v. Carrigan, supra, 543 F.2d at 1056. Because I find that petitioner has succeeded in demonstrating actual prejudice, I do not need to determine if this rule is of constitutional magnitude and applicable on habeas corpus.

8. Transcript at 3, State v. Nanette Mone, supra.

found this characterization of Mrs. Mone's conduct persuasive and immediately prior to imposing sentence commented:

"I think that everybody has apparently come to agree that your husband deceived you, and that you thought that he was engaged in writing a book, and that you were not aware of what he really planned and schemed to do. After considerable thought I believe that to be so."[9]

Petitioner's sentencing immediately followed that of his wife. At this hearing, Egan highlighted the strange background of the crime and the pain and suffering petitioner had caused his own family, especially his parents. Judge Dannehy rejected the recommendation of the prosecutor and sentenced petitioner to a term of nine to twenty years.

 The attempt by Egan to diminish the offensiveness of Mrs. Mone's actions by emphasizing his other client's culpability was clearly prejudicial to the petitioner. Each defendant was entitled to "zealous and independent" counsel. *United States v. Carrigan, supra,* 543 F.2d at 1057. It is a denial of the right to the effective assistance of counsel for an attorney to sacrifice the interests of one client in order to secure a benefit for another. *United States v. DeBerry, supra,* 487 F.2d at 454; *United States ex rel. Taylor v. Rundle,* 305 F.Supp. 1036 (E.D.Pa.1969); *United States ex rel. Thompson v. Rundle,* 294 F.Supp. 933 (E.D. Pa.1968). *See also, Gravitt v. United States,* 523 F.2d 1211 (5th Cir. 1975). The

situation here is not unlike that in *Gravitt* where the Fifth Circuit said:

"While the attorney may have decided that nothing favorable could be said in . . . [appellant's] behalf, we cannot presume that the actual remarks—unfavorably contrasting him with his brother . . . [the codefendant]—did not influence the trial judge in his assessment of punishment. The attorney's active disservice to appellant's interests compels a finding of ineffectiveness."

523 F.2d at 1219.[10]

The conflict of interest permeated the entire proceeding and requires that the petitioner be given an opportunity to withdraw his prior plea. Petitioner's plea of guilty was part of "a package deal." According to Attorney Egan's own testimony, at all times, he sought to negotiate a plea agreement for the "two of them together."[11] The key part of the deal was that Mrs. Mone would avoid further incarceration through a suspended sentence. Petitioner's own plea was dependent upon such a recommendation for his wife.[12] The plea package was to Mrs. Mone's decided advantage.[13] She was allowed to plead to a lesser offense with a recommendation for probation.

 In deciding whether to plead guilty, a defendant is entitled to the effective assistance of counsel, untrammeled by conflicting loyalties. *United States ex rel. Taylor v. Rundle, supra,* 305 F.Supp. at 1040. In this case, the defendant Nanette Mone had a distinct interest and motive in

---

9. *Id.* at 5.

10. In *Gravitt,* the same attorney represented two brothers charged with transportation and possession of firearms while convicted felons. At sentencing, counsel urged probation for the younger brother saying, " 'I feel he was just at the wrong place at the wrong time *with the wrong person.*' " 523 F.2d at 1217 (italics those of the Fifth Circuit).

11. Transcript, *Mone v. Zeichner, supra,* at 158.

12. Egan testified:
"When we got into the plea bargaining stage and he had talked to me, being most insistent that she get a suspended sentence, at that time he indicated to me that he would—when

I would get a recommendation from the State's Attorney's Office that he would consider whether he would plead guilty or not. But the thing always was that she had to have a suspended sentence, and in fact, he wouldn't be put to plea the morning that they were both presented unless she went on first, as she did, and did get the suspended sentence. And I believe the record will show that, sir. I know it will show it."
Transcript at 145, *Mone v. Zeichner, supra.*

13. Mr. Mone did receive certain benefits from the deal. The state agreed to drop the two lesser conspiracy charges and recommend a specific term of years.

seeing that the two defendants did not jointly go to trial. She claimed that she was an unwitting dupe of her husband, and that she had made telephone calls on behalf of her husband without any full awareness of the contours of his unlawful scheme. Petitioner's only defense concerned his lack of criminal responsibility for the crimes, that he was legally insane at the time of the incidents and unable either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law. *See* Conn.Gen.Stat.Ann. § 53a–13. If the case had gone to trial, Egan acting for Mrs. Mone would have had to demonstrate how she had been misled and duped by her husband. In petitioner's defense, the attorney would try to show that Mone was legally insane. These two defenses while not necessarily inconsistent would certainly have posed grave strategic difficulties for joint counsel. Through documentary evidence, petitioner has established that he had a viable insanity defense.[14] Such testimony would have at least undercut .Mrs. Mone's contention that she had been duped. The two had been married and lived together for more than a decade prior to the crime. Egan, as attorney for Mrs. Mone, had an incentive in insuring that petitioner's insanity claims were not fully aired. Attorney Egan's active disservice to petitioner at the time of sentencing when combined with the "package plea" agreement that was negotiated would seem ample prejudice arising out of the dual representation to invoke the rule of *United States v. Lovano, supra,* and require the state to give him an opportunity to withdraw his prior plea. As Mr. Justice Murphy observed in *Glasser v. United States, supra,* 315 U.S. at

76, 62 S.Ct. at 467, "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

The state maintains that Mone was not prejudiced by the proceedings because he concurred in the strategy Egan employed. Following petitioner's plea of guilty, Judge Dannehy asked Mone if he had any further questions. After conferring with counsel, Mone asked that his wife be given mercy because she had no knowledge of the crime and had only done what petitioner demanded of her.[15] The state would have the court infer that it was a calculated strategy of the two defendants that petitioner should take the blame for the crime. But in this case where there was no waiver of petitioner's right to the unimpaired assistance of counsel, this strategy only heightens the prejudice that accrued because of the joint representation. In the absence of such a waiver, Egan had no right to turn Mone into an advocate for his wife to the detriment of petitioner's own defense. In a similar circumstance, the Court of Appeals has stated:

> "The government argues . . . that it was decided by the defendants that Edwards would serve as the 'fall guy' and it was hoped that DeBerry would be acquitted. We do not know this, but even if we did, there would be all the more a conflict of interest. No one should be represented by an attorney who is making him the 'fall guy' by design."

*United States v. DeBerry, supra,* 487 F.2d at 454. It would have been obviously prejudicial for Attorney Egan representing the

---

**14.** Petitioner's Exhibits A–E. The issue is not whether petitioner's alleged insanity was so obvious as to render Egan's assistance incompetent, but rather whether counsel's divided loyalties may have prevented the full exploration and presentation of such a colorable defense.

**15.** Mone stated:
 "Your Honor, I again would like to emphasize my wife had absolutely no knowledge of what did take place, and I at this time would very much like to ask the Court if the Court

might have mercy to release my wife, to release her clear, because she had nothing whatsoever to do with this. She did only what I asked her to do, and she just thought that I was writing a book. My family thought I was writing a book. The way this thing turned out there was no knowledge at all. I do not want to see her with a criminal record because there was no conspiracy ever."
 Transcript at 11, *State v. Mone, supra.*

couple to have placed Mone on the stand and elicited such admissions of guilt. While the comments at the plea were made in a different context, for the purposes of demonstrating the prejudice of the dual representation they stand on a similar footing.

In deciding to plead guilty, petitioner of course might be influenced by any leniency shown his wife. He might even perhaps decide to emphasize his own guilt in order to mitigate her responsibility. *See Boehmer v. United States,* 414 F.Supp. 766 (E.D. Pa.1976). The point is only that in making such decisions, petitioner is entitled to the loyal and zealous assistance of independent counsel.

For these reasons, it is ORDERED that a writ of habeas corpus shall issue unless the state shall vacate the petitioner's prior sentence and afford him the opportunity to plead over within 60 days of the entry of judgment in this action.[16]

SO ORDERED.

---

16. These 60 days shall be computed in accordance with the rules stated in 18 U.S.C. § 3161(e), (h).