**Jerry Eugene GRAVITT,
Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

**No. 74–4046.**

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1975.

Rehearing and Rehearing En Banc
Denied Jan. 26, 1976.
See 526 F.2d 378.

Michael Pearce Dodson, Tallahassee, Fla. (Court-appointed), for petitioner-appellant.

Clinton Ashmore, Asst. U. S. Atty., Tallahassee, Fla., for respondent-appellee.

Before BELL, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Jerry Eugene Gravitt appeals from the trial court's denial of his motion to vacate and set aside his conviction. Title 28, U.S.C., Section 2255. The district court, without a hearing, rejected his contentions that he was denied his Sixth Amendment rights to a speedy trial and to the effective assistance of counsel, and that he was improperly sentenced. We vacate and remand for further proceedings.

The facts necessary to an understanding of our present disposition are as

follows.[1] The Panama City Beach, Florida, police arrested appellant and his two brothers May 15, 1971, on a DeKalb County, Georgia, warrant charging armed robbery and assault. A search of appellant uncovered six .38-calibre revolver cartridges and a .38-calibre Colt revolver. A search of Ronnie Gravitt produced car and motel keys which, in turn, led to police discovery of a small arsenal in appellant's Buick automobile, including a bomb made of ¼ pound of military "Flex–X", with blasting cap attached, a battery capable of detonating the bomb, a 30-calibre M–1 military carbine, a 12-gauge Model 11 Remington shotgun loaded with 5 "00" buckshot shells, and 3 loose "00" buckshot shells, and a .45-calibre automatic rifle with a fully loaded 30-round magazine attached, and 10 loose rounds of .45-calibre ammunition.

On May 16, under questioning by two agents of the Alcohol, Tobacco and Firearms Division of the Treasury Department, appellant confessed to transporting the weapons and ammunition from Atlanta, Georgia, where he had purchased them, to Florida. He admitted that he was a fugitive and a convicted felon.

On May 21, a formal complaint was filed charging him with unlawful possession of an unregistered machine gun in violation of Title 26, U.S.C., Section 5861(d) and an arrest warrant issued.[2] Appellant was shortly thereafter removed to Georgia ostensibly for trial on the state charges which led to his May 15, 1971 arrest.[3]

Eleven months later on April 14, 1972, a three-count federal indictment was returned. Count One charged appellant with being a convicted felon on May 21,

1971, and then transporting in interstate commerce a firearm, ¼ pound of military Flex–X explosive, with blasting cap and detonating battery, in violation of Title 18, U.S.C., Section 922(g)(1). Count Two charged appellant with being a convicted felon on May 21, 1971, and then transporting in interstate commerce certain firearms, the .45-calibre automatic rifle, the .30-calibre M–1 carbine, and 30 rounds of .45 calibre ammunition, in violation of Title 18, U.S.C., Section 922(g)(1). Count Three charged that appellant, Jerry Eugene Gravitt, and his younger brother, Ronnie Gravitt, on May 21, 1971, while convicted felons possessed the firearms described in Count Two, in violation of Title 21 (sic), U.S.Code, Section 5861(d). All offenses were charged to have occurred in the Northern District of Florida. Appellant's presence for arraignment on May 5 was secured by writ of habeas corpus *ad prosequendum*. A single attorney was appointed to represent both appellant and his brother at their joint trial originally scheduled for May 31, 1972.

On May 31, the government's motion for continuance was granted after defense counsel advised the court that neither defendant objected. On May 30 and 31, however, appellant in fact wrote the trial judge protesting the continuance and demanding a speedy trial, and further requesting appointment of new counsel. The trial judge responded to the speedy trial demand by letter dated June 6, 1972, informing appellant that the U. S. Attorney was filing a motion to dismiss the indictment.

Order of dismissal under F.R.Crim.P. 48(a) was entered on June 8, 1972. On August 9, 1972, a superseding four-count

---

1. A fuller statement of the facts underlying the conviction appears in our opinion affirming on direct appeal, *United States v. Gravitt*, 5 Cir. 1973, 484 F.2d 375, cert. denied 1974, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761.

2. Appellant further contends that a federal detainer was lodged with the Florida authorities on May 16, 1971. We find no evidence of the detainer in the record. On remand, the district court should determine whether, and if so, when, it was lodged.

3. The record on appeal does not reveal the nature, length or disposition of any proceedings in the Georgia courts. During oral argument, appellant's counsel indicated that appellant was tried and convicted on Georgia state charges and was serving his sentence prior to federal indictment and his return to Florida under a writ of habeas corpus *ad prosequendum*. The district court on remand should inquire into this interim period for its bearing on disposition of the speedy trial claim.

indictment was returned. It charged that on May 15, 1971, Jerry and Ronnie Gravitt (Count One) unlawfully transported firearms (the .45 calibre automatic rifle, the M–1 carbine, the shotgun, the explosive, and a .38 calibre Colt revolver) in interstate commerce while fugitives from justice from Georgia in violation of Title 18, U.S.C., Section 922(g)(2); (Count Two) unlawfully possessed unregistered firearms, in violation of Title 26, U.S.C., Section 5861(d); [4] (Count Three) unlawfully transported firearms (the .45 calibre automatic rifle, the M–1 carbine, the 12-gauge shotgun and the explosive device) in interstate commerce while convicted felons, in violation of Title 18, U.S.C., Section 922(g)(1); and (Count Four) unlawfully transported ammunition (the .45 calibre, .30 calibre and 12-gauge ammunition) in interstate commerce while convicted felons in violation of Title 18, U.S.C., Section 922(g)(1).

At his August 28 arraignment the appellant again challenged the adequacy of his representation by the single appointed attorney. On September 24, he filed a *pro se* motion for dismissal because of violation of his right to a speedy trial. His attorney disassociated himself from the motion, which was heard and denied prior to trial. Trial on the substitute indictment began on September 26, 1972.

The jury found appellant guilty as charged in Counts One, Three and Four. He received consecutive five year confinement sentences under Counts One and Three and a five year concurrent sentence under Count Four. His conviction [5] was affirmed on direct appeal. *United States v. Gravitt,* 5 Cir. 1973, 484 F.2d 375, cert. denied 1974, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761.

Jerry Eugene Gravitt on June 27, 1974, filed his *pro se* motion under Title 28, U.S.C., Section 2255, to vacate and set aside his conviction. This motion was denied without a hearing by his trial

judge, following a response by the U. S. Attorney to a Rule to Show Cause. We granted leave to appeal in forma pauperis and ordered new counsel appointed to represent the petitioner-appellant in this appeal.·

## I. THE SPEEDY TRIAL ISSUE

 Respecting the speedy trial issue, we conclude that this matter requires further airing in the court below. Appellant contends that dilatory and oppressive government tactics resulted in a sixteen month delay between his May 15, 1971 arrest and his September 26, 1972 trial, in spite of his demands for a speedy trial and objections to the continuance. He alleges prejudice due to dimmed memories, the government's procurement of an enhanced indictment, and because of the federal detainer allegedly lodged with Georgia authorities.

The district judge, relying upon *United States v. Broadway,* 5 Cir. 1973, 477 F.2d 991, rejected the speedy trial claim summarily, noting that the offense was committed on May 15, 1971, the first indictment was returned on April 14, 1972, and trial was begun on September 26, 1972. In resolving this issue without holding an evidentiary hearing, the lower court committed error. We vacate and remand.

 In *United States v. Marion,* 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, the Supreme Court held that the Sixth Amendment right to a speedy trial does not attach until an individual becomes an "accused", which occurs with the initiation of criminal prosecution, whether by arrest, information, indictment, or other formal charge. 404 U.S. at 320–21, 92 S.Ct. at 463, 30 L.Ed.2d at 478–79. Delays prior to the initiation of criminal proceedings and before the statute of limitations has run are governed by the due process clause of the Fifth Amendment. *Marion,* supra, 404 U.S. at 322–24, 92 S.Ct. at 464–65, 30 L.Ed.2d at

---

4. Count Two was quashed by the court.

5. Ronnie Gravitt took no appeal from his identical conviction and sentence, which was probated by the trial judge.

479–81. Under the Fifth Amendment, dismissal is required only where the delay substantially prejudices a defendant's right to a fair trial and where the delay is a deliberate device to gain a tactical advantage. *Id.*

In *Broadway,* supra, the defendant relied solely upon pre-indictment delay to sustain his speedy trial claim. The offense was committed on May 26, 1971, Broadway was indicted December 13, 1971 and was not arrested until January 15, 1972. Following *Marion,* we rejected Broadway's claim because the speedy trial guarantee had not attached prior to indictment, he was indicted within the limitations period, and he failed to show actual prejudice amounting to a denial of due process.

■ In relying upon Broadway, the lower court indicated a belief that Gravitt became an "accused" only at the time of the first indictment's return. This ignored the record, which indicates that appellant's right to a speedy trial in fact attached prior to the return of the first indictment,[6] when he was in state custody, federal authorities knew where to locate him, a formal complaint was filed, and an arrest warrant issued. See *Dickey v. Florida,* 1970, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26; *Pitts v. North Carolina,* 4 Cir. 1968, 395 F.2d 182. It is from this point in time that the delay must be computed.

■ The rule in this circuit appears to be that the *Barker v. Wingo,* 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, balancing test is inapplicable to a post-arrest, pre-indictment delay, even though this delay falls within the scope of the speedy trial guarantee. See *United States v. Palmer,* 5 Cir. 1974, 502 F.2d 1233 at 1235. The period of pre-indictment delay is counted only upon a showing of substantial actual prejudice. The length of and reason for the pre-indictment delay are of peripheral concern. *Id.*[7]

In *United States v. Davis,* 5 Cir. 1973, 487 F.2d 112, as amended on denial of rehearing, petition for rehearing en banc denied, 486 F.2d 1403, cert. denied 1974, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d

---

6. This right did not attach, contrary to appellant's contention, on the date of arrest. Gravitt was arrested on charges stemming from violations of Georgia state law, not on charges stemming from the federal firearms conviction which he now challenges. For purposes of determining when the right to speedy trial attaches, the *basis* for arrest is critical. *United States v. Cabral,* 1 Cir. 1973, 475 F.2d 715.

7. *United States v. Palmer,* 5 Cir. 1974, 502 F.2d 1233, follows our holding in *United States v. Zane,* 5 Cir. 1973, 489 F.2d 269, 270, cert. denied 1974, 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310, where we first held that post-arrest, pre-indictment delay falls within the scope of the speedy trial guarantee but requires a showing of actual prejudice to warrant dismissal. To recognize that the speedy trial right has attached but to refuse to apply the *Barker v. Wingo,* 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, balancing test appears to be inconsistent with the teachings of *United States v. Marion,* 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, and *Barker.* In *Marion,* the Supreme Court required a showing of actual prejudice and delay taken in order to gain a tactical advantage for the period *prior* to the time the right attached, when the due process clause controlled. See *United States v. Beckham,* 5 Cir. 1975, 505 F.2d 1316,

1318. *Barker* mandated the balancing test once the guarantee has attached. *Palmer* adopts a middle course for post-arrest, pre-indictment delays, requiring a showing of substantial actual prejudice but not of intent to prejudice the accused. 502 F.2d at 1235.

Analysis of *United States v. Smith,* 5 Cir. 1973, 487 F.2d 175, cert. denied 1974, 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75, and *United States v. Schools,* 5 Cir. 1973, 486 F.2d 557, the two cases primarily relied upon by *Zane,* reveals the tenuousness of this position. In *Smith,* the arrest was based on charges which differed from those supporting the indictment. As indicated, n. 5, *supra,* arrest under such circumstances does not render an individual an "accused" for purposes of computing delay. In *Schools,* the delay in issue was reasonable under any test.

While the legal underpinnings supporting this court's rejection of the *Barker* balancing test for post-arrest, pre-indictment delay are questionable, we feel compelled, absent intervening Supreme Court or en banc precedent, to follow our prior case law interpreting the latest Supreme Court pronouncements. See *Burroughs v. United States,* 5 Cir. 1975, 515 F.2d 824; *Popeko v. United States,* 5 Cir. 1975, 513 F.2d 771.

878, we applied the same test where the prosecution dismissed the original indictment, and reindicted the defendant on enhanced charges twelve and a half months later.

*A priori,* the same rule applies to the present situation, where appellant complains of delay after the initiation of criminal prosecution but prior to reindictment.

■ The failure to inquire into the existence of substantial actual prejudice during the long period preceding reindictment requires remand for an evidentiary hearing. Actual prejudice is not to be viewed narrowly. *Palmer,* supra, 502 F.2d at 1235. It includes three types of prejudice identified by the Supreme Court in *Barker*: (1) undue and oppressive pretrial incarceration; (2) anxiety and concern which accompany public accusation; and (3) impairment of one's defense. 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Appellant was in Georgia custody prior to his return to Florida for trial, in late April 1971. In determining whether Gravitt suffered substantial actual prejudice, the court should examine the circumstances of his detention, including whether he underwent a trial in Georgia, and, if so, the time consumed in trial proceedings, and whether Gravitt in the interval served any sentences then or previously imposed. See note 3, *supra.* In this connection, it should also determine whether a detainer was in fact lodged, see note 2 *supra,* to appellant's prejudice. See *Smith v. Hooey,* 1969, 393 U.S. 374, 378–80, 89 S.Ct. 575, 577–78, 21 L.Ed.2d 607, 611–12; *Pitts v. North Carolina,* supra, 395 F.2d at 187–88.

■ Appellant has alleged prejudice due to the return of an enhanced indictment. Reindictment on enhanced charges, however, except to the extent that it may involve one or more of the enumerated three types of prejudice an accused can suffer by delay, is not protected against by the speedy trial guarantee. See *Davis,* supra, 487 F.2d at 116, 118.[8]

■ Should Gravitt successfully demonstrate that he suffered substantial actual prejudice, the pre-indictment delay must be weighed in deciding whether his right to speedy trial was denied. The court must then also consider the reasons for the delay, see note 3, *supra,* taking due heed of the Supreme Court's admonition that different weight is accorded to different reasons. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Thus, a deliberate delay to prejudice the defense is weighted heavily against the government; negligence is counted against the government but is weighted less heavily; and some excuses completely justify the delay. *Id.* Therefore, if appellant was in fact being held for trial in Georgia, delay prior to his "reasonable availability" is not counted. *Prince v. Alabama,* 5 Cir. 1975, 507 F.2d 693, 701–702. Reindictment to correct the date of commission of the offense and to enhance the charges where there has been no newly discovered evidence, as the record here suggests, is an indication of government negligence and should be so considered.

■ The two month period which followed reindictment must be evaluated under the *Barker ad hoc* balancing test, with focus on the four factors there delineated: (1) length of delay; (2) reasons for delay; (3) defendant's assertion of his right;[9] and (4) prejudice. *Ibid.* 407

---

8. For example, the lower court should weigh the fact that appellant was confined for an additional four months because of the reindictment, unless he was then serving time which would be credited to a state sentence. See *United States v. Davis,* 5 Cir. 1973, 487 F.2d 112, 117, as amended on denial of rehearing, petition for rehearing en banc denied 1975, 486

F.2d 1403, cert. denied 1974, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878.

9. In *Barker,* the Supreme Court commented that it would be difficult for a defendant to prove that his right to a speedy trial was violated where he failed to assert it, 407 U.S. at 531–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at

U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; see *Palmer, supra.* Of course, whether the twelve-month pre-indictment delay is to be counted lends significance to or removes it from this two-month, post-indictment period.

We intimate no views as to the outcome on remand. We require only that the lower court accord appellant an opportunity to prove prejudice by holding a hearing.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

 Appellant further contends that he was denied the effective assistance of counsel. The government does not really seriously argue otherwise. We find merit in this claim and, should appellant's speedy trial claim be denied on remand direct that the motion under § 2255 be granted, with directions for Gravitt's discharge should the United States fail to retry him within a reasonable period.

One attorney was appointed to represent both Jerry and his brother Ronnie who were indicted and tried together. During the period prior to trial, Jerry was held in jail while Ronnie was free on bond.

On May 30, appellant wrote the district judge expressing dissatisfaction with his attorney and claiming that the attorney did not have his best interests at heart. On May 31, he wrote the judge a second letter, asserting that he strongly objected to a continuance but that his attorney informed him that his wishes were irrelevant because his brother was free on bond and would benefit from a continuance by having a few extra months of freedom.

At the August 28 arraignment before the trial judge the attorney related his version of the continuance discussion, stating that appellant thought it would

be better to go to trial but agreed to do what Ronnie wanted:

> Both of them did agree to the continuance. Ronnie Wayne Gravitt was out on bail at the time and he readily agreed. Jerry Eugene said he thought it would be better to go ahead and be tried and he would do whatever his brother wanted and his brother wanted a continuance and so *I explained to him that they were going to have to both agree at that time,* they both agreed that their case should be continued and I discussed with them the possibility of additional charges being entered but they both agreed the case be continued. (Emphasis added)

The record does not indicate that the attorney moved for a severance, or that he even advised Jerry Eugene Gravitt of his right to apply for a severance.

At sentencing, the attorney spoke only on Ronnie's behalf, urging probation:

> Your Honor, especially with respect to Ronnie Wayne, I know the probation officers have given you certain information. I feel he was just at the wrong place at the wrong time *with the wrong person.* (Emphasis added)

"Wrong person" could be an allusion to no one else than the lawyer's other client, Jerry Eugene. Ronnie was in fact placed on probation under a suspended ten year sentence while Jerry was taken immediately to jail and thence to the U. S. Penitentiary at Atlanta, Georgia, for service of his ten year confinement sentence.

Gravitt contends that his court-appointed counsel was not devoted solely to appellant's best interest, but acted before, during, and after trial to protect his co-defendant, to his detriment. In support, he alleges that his counsel misrepresented to the court on August 28 his wishes with respect to the continu-

117–118, but indicated that this might not be the case where he was represented by incompetent counsel, 407 U.S. at 528–29, 92 S.Ct. at 2191, 33 L.Ed.2d at 116. Although here there is a question whether appellant ever consented to the continuance, or consented and changed his mind, the fact that his counsel rendered

ineffective assistance, see *infra,* and the fact that his May 30 and 31 letters assert, if not lack of consent, withdrawal of consent and contemporaneous assertion of his right, militate that the court on remand consider the lack of consent factor in appellant's favor as of May 30.

ance, that trial strategy was influenced by an effort to obtain a favorable sentence recommendation for Ronnie, and that counsel denigrated him at sentencing by the language quoted, *supra.*

The district judge who denied § 2255 relief was the same judge who had presided over the trial and the pre-trial proceedings. He relied on his observation of the attorney's trial conduct and vigorous attempt to suppress both appellants' confession and the evidence seized from his car.

But neither the finding that the attorney vigorously pursued the Fourth Amendment claim nor the court's observation of trial conduct adequately countervail appellant's challenge that his attorney represented defendants whose interests conflicted. Suppression of the confession and of the seized evidence was to the interest of both defendants and hence the vigorous pursuit of it was not conclusive as to lack of loyalty. Observation of trial conduct does not necessarily reveal that "erosion of zeal which may ensue from divided loyalty". *Castillo v. Estelle,* 5 Cir. 1974, 504 F.2d 1243, 1245. After a review of the entire record we are convinced of the legitimacy of appellant's position. We find that the attorney with the trial court's sanction, did indeed undertake to represent co-defendants with conflicting interests, and thereby violated appellant's Sixth Amendment right to the effective assistance of counsel.

> This court has long interpreted
> the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance. We consider undivided loyalty of appointed counsel to client as essential to due process. (Emphasis in original)

*MacKenna v. Ellis,* 5 Cir. 1960, 280 F.2d 592, 599, cert. denied 368 U.S. 877, 82 S.Ct. 121, 72 L.Ed.2d 78; see also *United States v. Edwards,* 5 Cir. 1974, 488 F.2d 1154. It is also clear that,

> the "Assistance of Counsel" guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.

*Glasser v. United States,* 1942, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680, 699. "The actual conduct of the attorney with relation to his client from arrest to final judgment" determines whether the requisite representation has been rendered. *Chalk v. Beto,* 5 Cir. 1970, 429 F.2d 225, 226; see also *Edwards,* supra, 488 F.2d at 1163.

We think it apparent that the interests of appellant and his brother and co-defendant Ronnie Wayne Gravitt were in conflict from the moment of arrest. This influenced the attorney's conduct to appellant's detriment. At the pre-trial stage, appellant had much to lose by consenting to a continuance and nothing to gain. He was already incarcerated; the evidence against him was strong; and while delay might have clouded the memories of witnesses, his confession was still available to the prosecution. By consenting, as the attorney warned, he risked the return of an enhanced indictment. His co-defendant, on the other hand, while undergoing the same risk of enhanced indictment would receive greater benefit from hazy memories, as he had not confessed and there was a question as to whether testimony was available to place him in the car during its movement from Georgia to Florida. Further, Ronnie stood to benefit from extra months of freedom on bond.

Separate counsel would have been free to argue strongly in appellant's behalf against a continuance. Competent counsel in this predicament could be expected at the least to move for a severance, and to bring the situation forcibly to the trial court's attention.[10]

---

**10.** While appellant, in his May 30 and 31 letters, did not specifically allege a conflict of interest, his statement therein of the facts was ample to call this underlying problem to the

It is not necessary to accept appellant's version of the continuance discussion in order to fault his attorney's failure to object to and seek relief from an appointment requiring his joint representation in the circumstances present. The tactic he chose—forcing agreement rather than moving for a severance or alerting the trial judge—indicates an unacceptable and insensitive attempt to reconcile competing interests. Cf. *Baker v. Wainwright*, 5 Cir. 1970, 422 F.2d 145, cert. denied, 399 U.S. 927, 90 S.Ct. 2243, 26 L.Ed.2d 794.

At the sentencing hearing, the attorney's disparagement of appellant in a successful effort to obtain favorable sentencing for Ronnie again shows the impossibility of counsel's representing both effectively. Of course, his success in having Ronnie placed on probation is irrelevant to our conclusion that appellant did not receive the "undivided loyalty" to which he was constitutionally entitled. See *United States ex rel. Thompson v. Rundle*, E.D.Pa.1968, 294 F.Supp. 933, 935. While the attorney may have decided that nothing favorable could be said in Jerry Gravitt's behalf, we cannot presume that the actual remarks—unfavorably contrasting him with his brother Ronnie—did not influence the trial judge in his assessment of punishment. The attorney's active disservice to appellant's interests compels a finding of ineffectiveness. Accord, *United States ex rel. Thompson*, supra.

Where, before trial, a conflict of interest exists and, after trial, counsel betrays his lack of allegiance to one defendant, a reviewing court is required to look no further for specific prejudicial action at trial. In these circumstances,

> the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty. Accordingly, where the conflict is real, as it is here, a denial of the right to effective representation exists, without a showing of specific prejudice.

*Castillo v. Estelle*, supra, 504 F.2d at 1245; see *Glasser*, supra, 315 U.S. at 75–76, 62 S.Ct. at 467, 86 L.Ed. at 702.[11] Where one attorney is appointed to represent two defendants at a joint trial he must be alert to facts indicating a possible conflict and, if they arise, promptly call them to the court's attention. While the conduct of appellant's attorney may well have resulted from carelessness and inattentiveness, and not from a conscious intent to aid Ronnie at Jerry's expense, it was nonetheless short of constitutional requirements. Jerry Eugene Gravitt is entitled to a new trial if the court denies the speedy trial claim on remand.

### III. CONCLUSION

Appellant additionally contends, with at least arguable merit under the decid-

court's attention. The letters also suggested the possibility of a severance, but this also was ignored by his counsel and the court.

11. Under questioning by the Alcohol, Tobacco and Firearms agents after arrest, Ronnie claimed he accidentally ran into Jerry in Florida. Jerry, however, told the agents that he and Ronnie came together to Florida from Georgia. Obvious trial strategy on Ronnie's behalf by counsel was to cast the blame on Jerry by attributing to him the origin and possession of the weapons and ammunition. Trial counsel recognized this, when during the suppression hearing he contended that Jerry's confession was prompted by a promise not to prosecute his brothers. That the attorney was aware that blame might be shifted, however, does not mean that he was capable of guarding against resulting improper influence upon his own courtroom conduct.

The transcript indicates the continuance of the conflict of interest throughout the trial by showing at least one occasion when it clearly surfaced. This incident highlights the difficult position joint counsel accepted and his resolution of his divided loyalty problem in favor of Ronnie. Sergeant Charles H. Buckley of the Panama City Beach Department testified that he found keys to the automobile from which the weapons were seized on Ronnie. On cross-examination, significantly the attorney asked the witness whether he could be positive that he removed the keys from Ronnie and not from Jerry.

ed cases and from the legislative history of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, § 1201, 82 Stat. 236, as amended by the Gun Control Act of 1968, Pub.L. 90–618, § 301(a)(1), 82 Stat. 1236, Title 18, U.S.C.App. § 1201, that the trial court impermissibly pyramided his punishment by imposing sentences of five years each for (a) interstate transportation of firearms as a fugitive, (b) interstate transportation of firearms as a felon, and (c) interstate transportation of ammunition as a felon, all stemming from a single interstate excursion.

Since we remand for a hearing on the speedy trial issue, with the direction that should that issue be decided against appellant, he is to be granted a new trial because of ineffective assistance of counsel at his first trial, anything we would otherwise be disposed to write on the subject of pyramiding of sentences would amount to no more than dictum. Gravitt may never undergo further trial; if so, he may not be convicted; if he is convicted, the trial judge upon further reflection may not undertake to pyramid sentences.

We conclude under the circumstances to pretermit consideration of Gravitt's claim that his sentences should not have been pyramided.

Vacated and remanded in part, reversed in part.