COMMONWEALTH *vs.* FRANCIS T. BOLDUC.

Suffolk.    October 13, 1976. — February 14, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Constitutional Law,* Assistance of counsel, Waiver of constitutional rights. *Practice, Criminal,* Assistance of counsel, New trial, Plea, Waiver.

A defendant's guilty plea to thirty-four indictments was not knowingly and voluntarily made where the defendant's counsel failed to perform the obligation placed on him by the sentencing judge to advise the defendant of the nature and number of all the charges against him. [118-123] BROWN, J., concurring.

Upon determining that a guilty plea made by the defendant fourteen years earlier was constitutionally defective, this court remanded the case for a finding whether the defendant had waived his right to challenge the plea. [123-126]

INDICTMENTS found and returned in the Superior Court on August 2, 1960.

A motion to vacate sentences and withdraw pleas of guilty was heard by *Dwyer*, J.

The case was submitted on briefs.

*P. J. Piscitelli* for the defendant.

*Daniel  C.  Mullane,*  Assistant  District  Attorney,  &
*George E. Foote, Jr.,* Special Assistant District Attorney,
for  the  Commonwealth.

GRANT, J.  In 1956 the defendant Bolduc was sen-
tenced to life imprisonment in the Massachusetts Correc-
tional Institution at Walpole following his conviction on
a counselled plea of guilty to so much of an indictment for
murder in the first degree as alleged murder in the second
degree. At some point not disclosed by any of the records
in these cases Bolduc escaped from Walpole. On July 13,
1960, Bolduc was arrested by Boston police officers while
in the company of John J. Maslauskas and Thomas J.
O'Keefe. On August 2, 1960, the grand jury sitting in
Suffolk County returned thirty-five separate indictments
in which Bolduc was named as a defendant, either alone or
jointly with one or both of Maslauskas and O'Keefe.[1] The
indictments included nineteen for armed robbery, four for
confining or putting in fear, two for assault and battery
with a dangerous weapon, one for breaking and entering
in the nighttime with intent to steal, five for illegal pos-
session of a firearm, three for conspiracy to rob and steal,
and one for assault with intent to murder. The various
offences charged, the dates on which they were alleged to
have been committed, and the defendant(s) named in
each indictment appear in the appendix to this opinion.

On October 18, 1960, Bolduc (to whom we shall some-
times refer as if he were the sole defendant) pleaded guilty
to all the indictments except the one for assault with
intent to murder, to which he pleaded not guilty. On
November 14, 1960, Bolduc was given concurrent life sen-
tences on the indictments for armed robbery and for con-
fining or putting in fear and concurrent sentences for
terms of years on all the other indictments except the
three for conspiracy and the one for assault with intent

---

[1] There do not appear to have been any prior proceedings against
Bolduc at the Municipal Court level, very likely because the police
were entitled to hold him as an escapee.

to murder. Those four indictments were placed on file. All sentences (see appendix) were to take effect from and after the expiration of the sentence the defendant was then serving.[2]

On April 12, 1973, the defendant filed in the Supreme Judicial Court for Suffolk County a petition for a writ of error by which he sought to reverse all of his 1960 convictions (except two of the convictions for conspiracy[3]) on the grounds that he had been deprived of the effective assistance of counsel when he pleaded on October 18, 1960, and that his plea had been made unknowingly and involuntarily. The Commonwealth demurred to the petition. On November 8, 1973, a single justice of the Supreme Judicial Court ordered that the petition be held on the docket of the county court in order to give the defendant an opportunity to file a "motion for a new trial" in the Superior Court. *Earl* v. *Commonwealth,* 356 Mass. 181, 183-184 (1969). The defendant filed such a motion on November 16, 1973.[4] The sentencing judge having retired, the motion was referred to another judge (motion judge), who treated the motion as one for leave to vacate the sentences and plea (*Commonwealth* v. *Hubbard,* 371 Mass. 160, 161, n.1 [1976]), held three days of evidentiary hearings during the period from June 27 through November 27, 1974, conferred with counsel on numerous occasions, made written findings of fact, and denied the motion. The defendant has appealed under the provisions of G. L. c. 278, §§ 33A-33G.

---

[2] An error in the relevant mittimus was corrected in the course of the proceedings reported as *Bolduc* v. *Commissioner of Correction,* 355 Mass.·765 (1969).

[3] Nos. 4836 and 4976 of 1960.

[4] The motion seeks no relief with respect to the indictment for assault with intent to murder (No. 4984 of 1960), as to which the defendant pleaded not guilty. There is some question as to whether the motion includes within its scope all the other thirty-four indictments enumerated in the appendix hereto. For reasons which will appear later in this opinion, the defendant should now be given leave to amend the motion to clarify the indictments as to which relief is sought.

As the plea in these cases was taken prior to the deci-
sion of the Supreme Court of the United States in *Boykin*
v. *Alabama*, 395 U. S. 238 (1969), the defendant had
the burden of proving his contentions. *Commonwealth* v.
*Leate*, 367 Mass. 689, 693-694 (1975), and cases cited. We
accept such of the motion judge's subsidiary findings as
are supported by the evidence and the undisputed facts
which appear in the records in these cases, note other
undisputed facts not referred to by the judge in his find-
ings, and independently arrive at an ultimate conclusion
different from that reached by the motion judge. See and
compare *Commonwealth* v. *Mahnke*, 368 Mass. 662, 666-
667, 688-691, 723-724, 725 (1975), cert. den. 425 U. S. 959
(1976). Specifically, we conclude that the defendant's
guilty plea was not knowingly and voluntarily made be-
cause the defendant's then counsel[5] failed to perform the
obligation placed on him by the sentencing judge to advise
the defendant of the nature and number of all the charges
against him before he should plead to those charges. See
art. 12 of the Declaration of Rights; G. L. c. 277, § 67;
*Commonwealth* v. *Kozerski*, 1 Mass. App. Ct. 106, 109, 111
(1973), *S. C.* 364 Mass. 833 (1974); *Calabrese* v. *United
States*, 507 F. 2d 259, 260 (1st Cir. 1974).

It now becomes necessary to trace in some detail the
course of the proceedings had on the thirty-five indict-
ments, as disclosed by the clerk's minutes on the original
papers and by the transcript of the hearings held on Octo-
ber 18 and November 14, 1960, which was admitted in
evidence before the motion judge. As already mentioned,
the indictments were all returned on August 2, 1960. The
defendant, Maslauskas and O'Keefe were all brought into
court without counsel on September 7, 1960, and placed
under recognizance on the indictments; no one was ar-
raigned on any indictment at that time.[6] On September 27,

---

[5] The defendant has been represented by different counsel since
1968.

[6] The defendant was then being held at the Charles Street jail. On
September 7, 1960, he was returned to Walpole, where he remained

1960, on some occasion when none of the defendants was present in court, the judge who ultimately accepted the plea appointed counsel to represent all three defendants in connection with all the indictments in which they had been named. Counsel had no contact with Bolduc at any time between September 27, 1960, and October 18, 1960. The motion judge found that during that period counsel "met a number of times with Maslauskas and O'Keefe and discussed the facts of the case with them. He also gathered what information he could from the police and newspaper accounts, but he was not allowed access to the police reports."[7]

All three defendants were next brought into court on October 18, 1960, in the presence of their appointed counsel. As already noted, no defendant had yet been arraigned on any indictment.[8] None of the indictments was read or summarized; there is nothing to suggest that the reading of any indictment was waived by any one. The number of pending indictments was not referred to. The proceedings opened with the prosecutor's request of the judge that all "the defendants be called for *change* of pleas" (emphasis supplied). The judge acceded to the request; counsel said nothing at that time to dispel the erroneous impression created by the prosecutor to the effect that the defendants had already been arraigned and pleaded not guilty. In response to questions put by the clerk as to whether they

except for the hearings held on October 18 and November 14, 1960. See n.8, *infra.*

[7] What counsel may have learned from Maslauskas or O'Keefe concerning the extent of Bolduc's activities or the charges against him is problematical. As appears from the appendix, Bolduc was charged with the commission of six offences on January 30, 1960; the first offence charge to O'Keefe was the formation of a conspiracy with Bolduc on May 15, 1960; the first indictments which linked Maslauskas with Bolduc alleged the commission of offences on July 1, 1960.

[8] The motion judge found that the defendant had been arraigned on and had pleaded not guilty to a single charge on September 7, 1960. That finding appears to rest on oral testimony adduced before the judge; it is not supported by the clerk's minutes found on any of the original indictments.

wished to "change" their pleas, Maslauskas and O'Keefe both said, "Guilty." The clerk then asked, "And Francis Bolduc, do you wish to change your pleas to each indictment in which you are named?" Bolduc replied, "I plead not guilty." The transcript then recites that counsel "conferred with Mr. Bolduc." That conference was immediately succeeded by the following colloquy: "COUNSEL: Your Honor, may I have time to read this defendant his indictments? THE COURT: Yes. COUNSEL: He doesn't even know what they are. THE COURT: All right."

There then followed a recess which the motion judge, on sharply conflicting evidence, found "lasted approximately twenty minutes." At the conclusion of the conference counsel and the defendant returned to the courtroom. The prosecutor advised the judge that the defendant wished to "change" his pleas except with respect to the indictment for assault with intent to murder, and that "he is named in many indictments here charging armed robbery, and he's now serving life at Walpole." None of the other thirty-four indictments was read or otherwise explained. There was no enumeration of the indictments. The clerk then asked, "Francis Bolduc, do you wish to change your pleas to the other indictments against you, with the exception of this indictment ... [for] assault with intent to murder? What do you plead to the other indictments?" Bolduc replied, "Guilty." Sentencing was deferred until November 14, 1960.

It is obvious that what occurred during the course of the twenty minute conference is critical to the defendant's contentions. But before considering the motion judge's findings on that subject we digress in order to note a number of undisputed facts apparent from the face of the transcript which lead us to conclude that at the outset of the conference counsel himself was unaware of the nature and number of all the charges which had been levelled against Bolduc. Following (not before) the acceptance of the pleas a Boston police sergeant who appears to have had some responsibility for the various cases testified, among other things, that all three defendants had partic-

ipated in armed robberies from thirteen separate victims they had held up in a named café on July 9, 1960; counsel sat in silence, despite the fact (as appears from the appendix) that only twelve robberies were alleged to have been committed by anyone on that date. The sergeant further testified that the defendants had carried weapons during the course of each robbery, that one of the defendants had had a pistol, and that the other two had had revolvers. Counsel's cross examination of this witness was confined to securing affirmative answers to his questions as to whether the defendants, following their joint arrest on July 13, 1960, had voluntarily told the police "of these acts that they had committed."[9]

The sergeant was followed by a detective from the ballistics unit at Boston police headquarters who testified that the weapons in question had been turned over to him on May 15, 1960, a date which was approximately (a) four months after the date of the single robbery charged to Bolduc alone (January 30, 1960), (b) six weeks prior to the date of the first robbery charged to Bolduc and Maslauskas jointly (July 1, 1960), and (c) seven weeks prior to the first robbery charged to all three defendants jointly (July 9, 1960). Counsel did not cross examine this witness at all. Finally, counsel raised no question when the judge purported to sentence Bolduc to a term of from eighteen to twenty years on the one indictment to which he had pleaded not guilty, namely, the one for assault with intent to murder.[10]

We return to the motion judge's findings concerning what transpired during the twenty-minute conference which preceded the offer and acceptance of the plea. One of the grounds for the present motion which has not pre-

---

[9] It has not been argued that the police were at that time in any position to predict with any degree of accuracy the nature or number of the indictments which would be sought from or returned by the grand jury.

[10] The minutes on the original indictment in question disclose only that the indictment was placed on file before trial. Who discovered the error in disposition is matter of conjecture.

viously been mentioned was that counsel had allegedly coerced Bolduc into pleading guilty in the hope that counsel could thereby gain shorter sentences for the other two defendants. See *Commonwealth* v. *Balliro*, 370 Mass. 585, 588-590 (1976). It is clear that some portion of the twenty minutes was devoted to a discussion of that topic, because the motion judge expressly found that during the conference counsel "stressed the fact that since defendant was serving a life sentence [for second degree murder], he had nothing to lose by pleading guilty and hence all his refusal would serve to accomplish ... [would be] to diminish the possibility that his two co-defendants would receive lighter sentences."[11]

We do not know how much of the remainder of the conference was devoted to its ostensible purpose, namely, counsel's reading the thirty-five indictments to the defendant. We know for a fact that the defendant learned of the indictment for assault with intent to murder because he pleaded not guilty to that indictment. We also think it quite clear that the defendant was not advised of the nature and number of all the other thirty-four indictments. We reach this conclusion by considering the motion judge's further finding that counsel "mentioned *several* of the indictments to the defendant during this time" (emphasis supplied). That finding, when considered in the light of all the testimony on the subject, has to be taken to mean that counsel read or explained something less than all the indictments. It is quite apparent that the judge rejected counsel's testimony as to what he had told the defendant and as to what he said the defendant already knew and chose instead to accept in major part the defendant's testimony that counsel had not read or explained the indictments individually, that "[h]e didn't read them off to me. He read *some* armed robberies" (emphasis supplied), and

---

[11] Counsel's hopes in this respect were soon to be disappointed. There had been no plea bargaining of any sort, and each defendant received the same sentence as every other defendant named in the same indictment.

Commonwealth v. Bolduc.

that "[h]e showed me about four or five indictments, a couple of armed robberies and one for attempted murder. And that's about it."[12]

We have, then, a situation in which the first judge, based on the representations of counsel that the defendant did not know what he had been indicted for, realized that the defendant had never been arraigned, granted counsel's request for an opportunity to read the indictments to the defendant, and relied on counsel's assumption of the obligation to advise the defendant of the nature and number of the charges against him. Counsel failed to perform that obligation, and we can only conclude that his failure in that respect resulted in the defendant's pleading guilty on a wholesale basis to thirty-four indictments, the great majority of which had never been explained to him. In short, due to the ineffectiveness of counsel, the defendant was unaware of the nature and number of all the charges, and his all inclusive plea must be declared to have been unknowing and involuntary in a constitutional sense.

However, it does not necessarily follow that the defendant is now entitled to have his sentences and plea vacated. The motion judge has found that "were a new trial to be granted, the prosecution would be unable to present its case due to the unavailability of witnesses after a lapse of fourteen years." The Commonwealth argues with some vigor that the defendant has waived any claim he might have had "because of inexcusable delay which he manipulated for his own tactical advantage."[13] The motion judge did not reach the question of a possible waiver because he denied the motion on other grounds. That question must now be considered.

"By St. 1964, c. 82, the one year limit on motions for a new trial under G. L. c. 278, § 29, was removed, and such

---

[12] There is no way of telling which of the nineteen indictments for armed robbery were mentioned by counsel.

[13] The Commonwealth raised this question below, but the defendant's brief ignores the question.

a motion is now permitted 'at any time.' " *Commonwealth* v. *Penrose,* 363 Mass. 677, 680 (1973). So far as we have been able to ascertain, mere delay on the part of a defendant in commencing postconviction proceedings for the vindication of a Sixth Amendment right has never been held to be a bar to the maintenance of such proceedings. See *Herman* v. *Claudy,* 350 U. S. 116, 123 (1956), and cases cited; *United States* v. *Liska,* 409 F. Supp. 1405, 1407 (E.D. Wis. 1976). And see *Chin Kee* v. *Commonwealth,* 354 Mass. 156 (1968). However, such delay may cause a defendant difficulty in maintaining his burden of proof (*United States* v. *Liska, supra*); it may have some bearing on the question whether the proceedings have been brought in good faith (*Cabrera* v. *United States,* 347 F. Supp. 936, 941 [D. Mass. 1972]); and it may have a bearing on the question whether the defendant has waived the right he seeks to assert (*Commonwealth* v. *Penrose,* 363 Mass. at 681). A waiver may be defined, for present purposes, as "an intentional relinquishment or abandonment of a known right." *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938). A waiver is not to be presumed from mere delay. See *Glasser* v. *United States,* 315 U. S. 60, 70 (1942). Whether a defendant has knowingly and voluntarily waived a Sixth Amendment right is a question of fact to be determined in the first instance by the motion judge in the light of all the circumstances found to exist in the particular case. See and compare *Commonwealth* v. *Penrose,* 363 Mass. at 680-681; *Johnson* v. *Zerbst,* 304 U. S. at 465, 469; *Glasser* v. *United States,* 315 U. S. at 71; *Chapman* v. *United States,* 469 F. 2d 634, 636-637 (5th Cir. 1972).

In the present case it was open to the motion judge to find that the defendant "was no tyro before the courts" (*Commonwealth* v. *Bettencourt,* 361 Mass. 515, 518 [1972]). The judge did find that "the defendant had appeared in court on numerous occasions prior to October 18, 1960, on various charges . . . . He had been represented by attorneys and had pleaded guilty on several of those occasions. On one occasion, he had pleaded guilty to sec-

ond degree murder . . . ."[14] The defendant testified that he had secured a transcript of the 1960 proceedings as early as 1965. He gave the transcript to his present counsel at least as early as June 24, 1968, because it was on or before that date that present counsel attached portions of the transcript to the original bill for declaratory relief in *Bolduc* v. *Commissioner of Correction, supra* (n. 2).[15] Those proceedings were effectively concluded by rescript issued on May 1, 1969. The defendant testified that he first discussed the matter of his guilty plea with his present counsel in August or September of 1971; that counsel reported several weeks later that (in his opinion) the defendant had grounds for a writ of error; that it took him about six or seven months to raise the funds necessary to engage counsel; and that counsel advised him not to commence legal proceedings until after he should see the parole board on some then pending application for relief.[16] The defendant freely admitted that he had purposely delayed the commencement of legal proceedings "because it was tactically of value for [him] to wait." On June 1, 1972, the defendant received a parole on his 1956 life sentence for second degree murder. As aforesaid, the present proceedings were initiated in the Supreme Judicial Court on April 12, 1973.

---

[14] The judge, with the consent of the defendant's present counsel, inspected the defendant's criminal record as set out in his probation record. That record was incorporated by reference into the judge's findings and is before us.

[15] There was testimony before the motion judge to this general effect. We have examined the original papers on file in the Supreme Judicial Court. See *Flynn* v. *Brassard,* 1 Mass. App. Ct. 678, 681 (1974).

[16] It is possible that the motion judge believed that the pendency of court proceedings would have interfered with the parole board's consideration of the defendant's application. Following the third day of testimony the judge denied the present motion pro forma and without prejudice "to provide the defendant with an opportunity to renew his efforts before the parole board." It appears from the original papers that Maslauskas had received a commutation of his sentences; at the time of his testimony before the motion judge he was in a halfway house from which he expected to be released shortly.

Commonwealth *v.* Bolduc.

In our view the defendant has sustained the burden of proving that his 1960 plea of guilty was unknowing and involuntary in a constitutional sense. Whether the present motion was properly denied will turn on a finding of fact which will now have to be made by the motion judge, acting on the evidence now before him and in accordance with the principles stated in this opinion, as to whether the defendant has waived his right to maintain the present proceedings. If the judge does find such a waiver, the denial of the motion is to stand; if the judge does not find such a waiver, the defendant's sentences and plea are to be vacated on all the indictments except No. 4984 of 1960.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

A P P E N D I X .

| Indictment No.* | Offence alleged ** | Date of offence*** | Codefend- ant(s) named **** | Disposition as to Bolduc |
|---|---|---|---|---|
| 4980 | AR | Jan. 30 | none | life |
| 4981 | B&E | Jan. 30 | none | 8 to 10 |
| 4982 | CF | Jan. 30 | none | life |
| 4983 | A&B | Jan. 30 | none | 4 to 5 |
| 4984 | AWIM | Jan. 30 | none | filed |
| 4985 | FA | Jan. 30 | none | 3 to 5 |
| 4836 | CS | May 15 through July 15 | O'K | filed |
| 4989 | FA | July 1 | none | 3 to 5 |
| 4990 | CS | July 1 | M | filed |
| 4991 | AR | July 1 | M | life |
| 4992 | AR | July 1 | M | life |
| 4974 | AR | July 4 | M | life |
| 4975 | FA | July 4 | none | 3 to 5 |

* The indictments are identified by the numbers originally assigned to them in 1960.

** "AR" is armed robbery; "AWIM" is assault with intent to murder; "A&B" is assault and battery with a dangerous weapon; "B&E" is breaking and entering in the nighttime with intent to steal; "CF" is confining or putting in fear; "FA" is a firearms violation; and "CS" is conspiracy to rob and steal.

*** All dates are in 1960.

**** "M" is Maslauskas, and "O'K" is O'Keefe.

Commonwealth *v.* Bolduc.

APPENDIX *(Cont.)*

| Indictment No.* | Offence alleged ** | Date of offence*** | Codefendant(s) named **** | Disposition as to Bolduc |
|---|---|---|---|---|
| 4976 | CS | July 4 | M | filed |
| 4977 | AR | July 4 | M | life |
| 4979 | CF | July 4 | M | life |
| 4993 | A&B | July 9 | none | 4 to 5 |
| 4994 | FA | July 9 | none | 3 to 5 |
| 5018 | AR | July 9 | O'K, M | life |
| 5019 | AR | July 9 | O'K, M | life |
| 5020 | AR | July 9 | O'K, M | life |
| 5021 | AR | July 9 | O'K, M | life |
| 5023 | AR | July 9 | O'K, M, Gallant***** | life |
| 5025 | AR | July 9 | O'K, M | life |
| 5026 | AR | July 9 | O'K, M | life |
| 5028 | AR | July 9 | O'K, M | life |
| 5029 | AR | July 9 | O'K, M | life |
| 5030 | AR | July 9 | O'K, M | life |
| 5031 | AR | July 9 | O'K, M | life |
| 5032 | AR | July 9 | O'K, M | life |
| 4837 | AR | July 11 | O'K | life |
| 4838 | AR | July 11 | O'K | life |
| 4986 | CF | July 11 | O'K | life |
| 4987 | CF | July 11 | O'K | life |
| 4988 | FA | July 11 | none | 3 to 5 |

***** Gallant is nowhere identified in any of the records before us. It does not appear that he was ever arrested or arraigned on this indictment.

BROWN, J. (concurring). I fully concur with the majority's conclusion that, at the time he entered his guilty plea, the defendant was denied the effective assistance of counsel. Unlike the majority, however, I also conclude that the ineffective assistance of counsel stemmed from a conflict of interest in his attorney's representation of him and his two codefendants.

The Sixth Amendment to the United States Constitution mandates that an attorney give his client his undivided loyalty. *Glasser* v. *United States,* 315 U. S. 60, 70, 75-76 (1942). This is true whether counsel is court appointed or retained. *United States* v. *Gaines,* 529 F. 2d 1038, 1043 (7th Cir. 1976). Although there is some doubt about whether the Sixth Amendment would require a new trial where a nonprejudicial conflict exists (*Common-*

Commonwealth *v.* Bolduc.

*wealth* v. *Geraway,* 364 Mass. 168, 174 [1973], and cases cited), the Supreme Judicial Court has held that justice may require the granting of a motion for a new trial under certain circumstances. *Commonwealth* v. *Geraway, supra.*[1] If an actual conflict of interest can be shown to exist, it may not be necessary to demonstrate that the conflict resulted in the loss of a substantial defense. *Commonwealth* v. *Smith,* 362 Mass. 782, 784-785 (1973). *Commonwealth* v. *Saferian,* 366 Mass. 89, 98, n. 14 (1974). "To determine the precise degree of prejudice sustained . . . is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser* v. *United States,* 315 U. S. at 75-76.

In exercising the power to order a new trial, "we must concern ourselves primarily with the particular defendant and the particular facts." *Commonwealth* v. *Geraway,* 364 Mass. at 184 (Tauro, C.J., and Braucher, J., dissenting). The facts of this case inexorably lead to the conclusion that the degree of conflict of interest on the part of the defendant's counsel was such as virtually to deprive the defendant of any representation whatsoever.

The record indicates counsel's willingness to sacrifice the defendant for the sake of the other two codefendants. At the brief meeting between counsel and the defendant on October 18 (held during the recess granted by the judge when it became apparent that the defendant was unaware of even the nature of the indictments against him), counsel told the defendant that he had nothing to lose by pleading guilty because he was already serving a life sentence. Moreover, counsel told the defendant that his failure to plead guilty might jeopardize his codefend-

---

[1] Although *Geraway* dealt with a conflict of interest in a trial setting, there is no difference in the standard to be applied in assessing a conflict of interest at trial and such a claim at sentencing after the entry of a guilty plea. *United States* v. *Merlino,* 391 F. Supp. 533, 535 (E.D. Pa. 1975).

ants' chances for lighter sentences.[2] Similar action by counsel representing multiple defendants has been held to be constitutionally defective. *United States* v. *Truglio,* 493 F. 2d 574, 580 (4th Cir. 1974). Counsel was only interested in getting the best possible deal for the two codefendants regardless of the cost to the defendant. See *United States ex rel. Thompson* v. *Rundle,* 294 F. Supp. 933, 935 (E.D. Pa. 1968); *United States ex rel. Taylor* v. *Rundle,* 305 F. Supp. 1036, 1039 (E.D. Pa. 1969).

Finally, counsel's repeated attempts to characterize the defendant as the moving force behind the "minor crime wave" that took place when the defendant escaped from jail indicate that his primary concern was to assist the codefendants. *Gravitt* v. *United States,* 523 F. 2d 1211, 1219 (5th Cir. 1975). *United States ex rel. Thompson* v. *Rundle, supra. United States ex rel. Taylor* v. *Rundle, supra. Commonwealth* v. *Johnson,* 223 Pa. Super. 307 (1973). *Commonwealth* v. *Bracey,* 224 Pa. Super. 294, 297 (1973).[3] The totality of the circumstances of the instant case make it apparent that the defendant received ineffective assistance of counsel because his counsel had divided loyalties.

---

[2] Although counsel's urging a defendant to plead guilty in order to help a codefendant receive a lesser sentence does not automatically result in rendering the defendant's plea invalid as being a coerced plea (*Commonwealth* v. *Balliro,* 370 Mass. 585, 589-590 [1976]), it is a factor to be considered in determining if the defendant's counsel had a conflict of interest that would result in the denial of the defendant's right to effective assistance of counsel.

[3] *Dukes* v. *Warden, Connecticut State Prison,* 406 U. S. 250 (1972), cited by the Commonwealth, is distinguishable from the instant case. In *Dukes,* counsel, in urging leniency on behalf of two of his clients, attempted to place the blame on the defendant whom he represented in an unrelated case. *Id.* at 254. The Supreme Court held that counsel did not induce the defendant to plead guilty in order to secure more favorable treatment for his other clients. The court also agreed with the Connecticut Supreme Court that the defendant had had a lengthy conversation with counsel prior to his guilty plea and that, on advice of counsel, the defendant had pleaded guilty in order to obtain the benefits of a plea bargain. *Id.* at 255-257. It is clear that *Dukes* does not present the same kind of conflict of interest that is present in the case at bar.

I concur in the majority's decision to remand this case to the motion judge to allow him to determine whether the defendant waived his right to bring this action. In making that determination, the motion judge should "indulge every reasonable presumption against the waiver of fundamental rights." *Glasser* v. *United States*, 315 U. S. at 70. *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938).