ARTHUR J. GUILLEMETTE *vs.* COMMONWEALTH.

Suffolk. May 4, 1978. — June 28, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Evidence*, Court record. *Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel. *Waiver. Parole.*

It was not open to a defendant, who waited eighteen years to bring an action claiming he was denied his constitutional right to assistance of counsel when he pleaded guilty to two indictments, to object to the admission in evidence of a handwritten note by the clerk who was in the court room when the pleas were taken to the effect that the defendant had been offered counsel and had refused the offer. [546-547]

Evidence in a proceeding by a defendant who claimed he was denied his constitutional right to assistance of counsel when he entered guilty pleas to two indictments supported a finding that the defendant had knowingly and intelligently waived his right to counsel. [547]

This court exercised its power of general superintendence under G. L.
c. 211, § 3, to vacate pleas of guilty by and sentences imposed on a de-
fendant eighteen years earlier where the sentences were imposed some-
what more informally than would now be permissible. [547-549]

PETITION for a writ of error filed in the Supreme Judicial
Court for the county of Suffolk on December 30, 1975.

The case was reported by *Wilkins*, J.

*Thomas Hoffman* for the plaintiff.

*Susan C. Mormino*, Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J. In 1957, without counsel, Guillemette
pleaded guilty to two indictments. More than eighteen years
later, on December 30, 1975, he filed a petition for writ of
error, claiming that he was denied the assistance of counsel
guaranteed him by the United States Constitution. We hold
that he has not carried his burden of proof. In the exercise of
our power of general superintendence, however, we grant
relief. G. L. c. 211, § 3.

Under *Commonwealth* v. *Penrose*, 363 Mass. 677 (1973),
the matter should have been dealt with by a motion for a
new trial rather than by a writ of error. Perhaps because the
trial judge had died, the Commonwealth did not raise the
point. The case was referred to a master, whose report was
confirmed by a single justice of this court. Another single
justice reserved and reported the case, without decision, to
the full court. Since the case has been fully heard and no
useful purpose would be served by further proceedings on a
motion for a new trial, we consider the case on the merits.

We summarize the findings of the master. In 1977 Guille-
mette was fifty-three years old. He went through the fourth
grade, and served in the army in 1942-1943. He had crimi-
nal trials in Lowell in 1943, in Oregon in 1947, and in
California in 1948, and had paid attorneys in the latter two
trials. He had shock treatments or psychiatric treatments, or
both, in Massachusetts and California. In 1951 he pleaded
guilty to second degree murder and was sentenced to life

imprisonment; at that time he was represented by assigned counsel. He appeared to be an alert witness.

While serving the life sentence, on July 30, 1957, Guillemette attempted to escape from Massachusetts Correctional Institution, Concord, and he was indicted for the crimes of armed assault with intent to murder and for assault with a dangerous weapon, allegedly committed in the course of the attempted escape. On September 20, 1957, he pleaded guilty to the indictments and was sentenced to imprisonment for concurrent terms of fifteen to twenty years and eight to ten years, to be served from and after the life sentence. No transcript of the 1957 proceeding has been found. It was then the prevailing practice for the clerk to read aloud to the prisoner the sentence on each indictment.

On September 20, 1957, Guillemette was interviewed by an assistant district attorney for about five minutes in a detention room and then taken into the court room. There was no evidence that he represented to the judge that he was indigent and unable to hire counsel. He knew he could have an attorney at least if he paid for one. The judge specifically inquired twice whether Guillemette wanted to have advice of an attorney, and Guillemette said he did not. The master concluded that Guillemette had not sustained the burden of showing that his pleas were not voluntarily made. He also concluded that the refusal of counsel amounted to a waiver of counsel and a consent to proceed without counsel. He inferred that the judge knew Guillemette was without funds and that if counsel were provided it would necessarily be without charge to Guillemette.

At all times after the 1957 sentences, Guillemette was aware of the nature of those sentences. He testified that he tried to appeal them but did not get the necessary forms seasonably. He also testified that he interviewed representatives of the Massachusetts Defenders Committee in 1957 and 1962 in an effort to obtain review. But no court proceeding was filed until the present one was commenced on December 30, 1975. He was paroled from his life sentence on August 1, 1975, and began serving the two 1957 sen-

tences on August 14, 1975. The Commonwealth has been prejudiced by the lapse of time, the death of the judge, and the practical certainty that it would now be impossible to retry Guillemette. If the burden rests on him to show that he has not waived his constitutional claims by the delay in asserting them, he has not sustained that burden.

1. *The clerk's note.* The finding that Guillemette refused counsel rests on a note found in the file of the case. That note, undated and unsigned, was in the handwriting of the assistant clerk who was in the court room when the 1957 pleas were taken. It read: "Court — Do you want an attorney? Defendant — I don't need one. I am guilty. I do not wish one. Court at later time — I again ask you if you want an attorney. Defendant — I do not." The master found that the note was an authentic partial record of the colloquy between the judge and Guillemette when Guillemette pleaded guilty.

The pleas were taken on September 20, 1957, before what is now S.J.C. Rule 3:10 was first promulgated on June 13, 1958. See 337 Mass. 813 (1958); *Subilosky* v. *Commonwealth*, 349 Mass, 484, 485-486 (1965). A change in the former practice, not to appoint counsel in noncapital cases, had been foreshadowed, however, in *Pugliese* v. *Commonwealth*, 335 Mass. 471, 475-476 (1957), and *Brown* v. *Commonwealth*, 335 Mass. 476, 482 (1957), both decided on February 27, 1957. The master found, on the basis of the note, that the judge was probably aware of this development and had departed from the usual pre-1958 Superior Court practice.

Before the master, Guillemette objected to the admission of the note in evidence on the ground that the chain of custody had been broken when the Middlesex County court house records were moved and when clerks changed. The master properly overruled that objection, ruling that arguments over custody went only to the weight of the evidence. *Commonwealth* v. *Hogg*, 365 Mass. 290, 294-295 (1974). Guillemette now contends that the note fails to comply with G. L. c. 233, § 80, relating to official transcripts. See *Com-*

monwealth v. *DiPietro*, 373 Mass. 369, 391-394 (1977). He also contends that the note is hearsay. Those contentions, not having been made before the master, are not now open. Since they were not made, the master had no occasion to consider the applicability of G. L. c. 233, § 65, relating to the declarations of deceased persons, nor to make the findings required by that statute; and we do not consider any question under it. In any event, we do not think it is open to Guillemette, after waiting more than eighteen years to bring this proceeding, to object to reliable evidence of what transpired. As to the reliability of documents coming from a proper custody, see K.B. Hughes, Evidence § 386 (1961). The master properly considered all available data in an attempt to reconstruct the remote past. Cf. *Commonwealth* v. *Nolin*, 373 Mass. 45, 46-48 (1977) (belated motion for new trial heard on contemporary newspaper stories). See 4 J. Weinstein & M. Berger, Evidence par. 803 (16)[1] (1977).

2. *Waiver of counsel.* Once it was shown that Guillemette was offered counsel in open court and refused the offer, he had the burden of showing, by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel. *Moore* v. *Michigan*, 355 U.S. 155, 161-162 (1957). See *Carnley* v. *Cochran*, 369 U.S. 506, 516 (1962); *Maynard* v. *Meachum*, 545 F.2d 273, 277 (1st Cir. 1976); *LaPlante* v. *Wolff*, 505 F.2d 780, 782-783 (8th Cir. 1974), cert. denied, 420 U.S. 995 (1975); *Spanbauer* v. *Burke*, 374 F.2d 67, 72-74 (7th Cir. 1966), cert. denied, 389 U.S. 861 (1967). Apart from any question of burden of proof, we have upheld findings of waiver on evidence comparable to that now before us. *Commonwealth* v. *Delorey*, 369 Mass. 323, 329-330 (1975). *Commonwealth* v. *Deeran*, 364 Mass. 193, 198 (1973). Cf. *Commonwealth* v. *Fillippini*, 2 Mass. App. Ct. 179, 182-184 (1974). We hold that no denial of Federal constitutional right has been shown.

3. *Disposition.* Notwithstanding our conclusion on the Federal constitutional question, we join the master in his observations that "this case presents delicate and difficult questions . . . concerning the adequacy of the inquiry made

. . . at the time of sentencing and the precise nature of the pre-sentence discussion," and that the clerk's note "is somewhat fragmentary and incomplete." We think it proper to consider Guillemette's delay in seeking a remedy as bearing on questions of evidence and burden of proof, but we are not prepared to rule that the delay completely bars any relief. See *Commonwealth* v. *Bolduc*, 5 Mass. App. Ct. 115, 124 (1977), *S. C., ante* 530 (1978). It seems clear that the 1957 sentences were imposed somewhat more informally than would now be permissible. In the interest of justice, therefore, pursuant to our power of general superintendence, G. L. c. 211, § 3, we think the 1957 pleas of guilty and sentences should be vacated. The Commonwealth will then have a right to retry Guillemette, although we recognize the "practical certainty" found by the master that retrial will be impossible.

In any event, we think it more in the interest of justice to focus on the present situation than to rely on fragmentary evidence and technical rules of law in reconstructing and evaluating facts that occurred more than twenty years ago. The question should be whether "there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law," and whether "his release is not incompatible with the welfare of society." G. L. c. 127, § 130, as amended through St. 1955, c. 770, § 67. That question is entrusted to the parole board rather than to us. The record before us tells us nothing as to the basis on which parole was granted in 1975, nor as to the terms and conditions of parole. As the master pointed out, we cannot know whether the parole board would have granted the parole if its members had not supposed that Guillemette would continue to be held under the 1957 sentences. It seems entirely possible that the board merely desired to enable Guillemette to begin serving the 1957 sentences pursuant to G. L. c. 279, § 8A. See *Lussier* v. *Commissioner of Correction*, 3 Mass. App. Ct. 790 (1975).

Under G. L. c. 127, § 148, the board may revoke the parole at any time previous to its expiration. See *Baxter* v.

*Commonwealth*, 359 Mass. 175, 179-180 (1971); cf. *Stefan-ik* v. *State Bd. of Parole*, 372 Mass. 726 (1977) (constitutional limitations). We do not now decide on what grounds the board may act. But in view of Guillemette's delay of eighteen years, until after the parole was granted, in presenting a grievance known to him throughout that period, we do not think he is entitled to insist that the board adhere to a mistake induced by him.

The case is remanded to the single justice. It is to be continued for sixty days to permit the Commonwealth to apply to the parole board for reconsideration of its grant of parole on the 1951 life sentence. On a report of the result of such reconsideration, or on the expiration of the sixty days, whichever first occurs, the case is to be remanded to the Superior Court with instructions to vacate the 1957 pleas of guilty and sentences and for further proceedings.

*So ordered.*